UNITED STATES of America

v.

Calvin Linwood GIRST, Appellant.

No. 77–1604.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 10, 1978.

Decided March 28, 1979.

Rehearing Granted Dec. 26, 1979.

Michael L. Lehr, Asst. U.S. Atty., Washington, D.C., with whom Earl J. Silbert, U.S. Atty., John A. Terry, Michael W. Farrell and Daniel A. DeRose, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Ava Beth Scheinman,* with whom Michael Geltner, Georgetown Univ. Law Center, Washington, D.C. (Appointed by this Court), was on the brief, for appellant.

Before BAZELON, McGOWAN and MacKINNON, Circuit Judges.

Opinion for the Court filed by Circuit Judge MacKINNON.

MacKINNON, Circuit Judge:

From his conviction, following a bench trial, on three counts alleging firearms violations, Girst appeals contending that the trial court was in error (1) when it refused

* Entered an appearance as Student Counsel pursuant to Rule 20 of the General Rules of this Court.

to suppress certain evidence that was seized when he was arrested, and (2) when it allegedly convicted him of three firearms offenses for the same act. We sustain the court's denial of the suppression motion and set aside the judgment of conviction on one firearms count.

I

Acting on the basis of information received from two previously reliable informants a Special Agent of the U.S. Bureau of Alcohol, Tobacco and Firearms and officers of the Metropolitan Police Department obtained and executed a search warrant authorizing a search of the premises at 2028 13th Street, Northwest, for sawed-off shotguns and ammunition.[1] In the process of executing the search warrant the agent searched Girst and seized a loaded .32 calibre semi-automatic pistol that he was carrying.

We reject appellant's argument that the evidence of the gun should have been suppressed. It is clearly established that the search which uncovered Girst's illicit pistol was reasonable, and where police action is reasonable, it is lawful under the fourth amendment. *United States v. Hall*, 174 U.S.App.D.C. 13, 15, 525 F.2d 857, 859 (D.C. Cir. 1976); *Hinton v. United States*, 137 U.S.App.D.C. 388, 394, 424 F.2d 876, 897 (D.C. Cir. 1969). Here we find that a squad of police officers executing a valid search warrant entered a reputed "shooting gallery" for heroin addicts at 2028–13th Street, N.W., Washington, D.C. During this search, the police were informed that a man named "Reds" had left the house to seek narcotics and could be expected to return shortly. The officers guarding the front door were informed to expect "Reds" return at any time.

Shortly thereafter, while the search authorized by the warrant was still underway throughout the premises, appellant Girst

1. The warrant authorized a search for and the seizure of "weapons made from shotguns which have a barrel length of less than 18 inches and an overall length of less than 26 inches, and ammunition."

came up to the front door of the building. As he was reaching to open the door, the officers posted inside told him to come in. At this point, Girst turned in an apparent attempt to flee, and the police ordered him into the building. Once inside, in patting him down the police discovered the pistol that was the cause of Girst's arrest and conviction.

The frisk of appellant, solely a patting down of the outside of the clothing, fell clearly within the limited nature of a search authorized by the *Terry v. Ohio*, 392 U.S. 1, 83 S.Ct. 1868, 20 L.Ed.2d 889 (1968), "stop and frisk" doctrine. Under the circumstances that led to the issuance and execution of this search warrant the police officers involved were properly on the premises and were fully justified in being sufficiently suspicious of Girst to merit administering a limited protective pat-down for weapons. Not only was he entering a building known to be a "shooting gallery," but moreover, it was a shooting gallery known to be protected at times by armed men and one that was at the time the subject of a valid search for weapons. Whether or not the police had adequate grounds to suspect that appellant was "Reds" returning with narcotics, they had more than adequate grounds to suspect that any individual entering a "shooting gallery" where guns were frequently seen was an individual who fully justified a *Terry* frisk, for protective purposes if for no other. "A police officer need not defer . . . protective measures to the point of peril," *Young v. United States*, 140 U.S.App.D.C. 333, 337, 435 F.2d 405, 409 (D.C. Cir. 1970), nor must he "shrug his shoulders and allow a suspected criminal to walk away." *United States v. Hall, supra*, 174 U.S.App.D.C. at 16, 525 F.2d at 860. Protective pat-downs have been upheld in situations closely analogous to the instant case, even though the police in the other cases were searching only for narcotics, not firearms, and thus had less reason to fear that someone entering the premises might be armed. *United States v. Peep*, 490 F.2d 903 (8th Cir. 1974); *cf. United States v. Branch*, 178 U.S.App.D.C. 99, 108 n. 10, 545 F.2d 177, 186

n. 24 (D.C. Cir. 1976); *Guzman v. Estelle*, 493 F.2d 532, 535 n. 10 (5th Cir. 1974). *Terry v. Ohio, supra*, and *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) leave no doubt as to the legitimacy of the search involved in this case.

## II

Appellant's second contention is that his conviction and sentence on the three firearms counts cannot stand because they impose penalties for the same act. We find this complaint to be partially correct and we perceive another defect in the sentence as well.

All three counts involved Girst's possession, and transportation in interstate commerce, of a .32 calibre pistol.

The First Count of appellant's indictment alleged that—

> On or about February 11, 1977 . . . GIRST, having been convicted of a crime punishable by imprisonment for a term exceeding one (1) year, did knowingly ship and transport a firearm . . . a .32 calibre pistol, in interstate commerce from the State of Virginia to the District of Columbia.

This conduct was alleged to violate 18 U.S.C. § 922(g)(1) which provides

> (g) It shall be unlawful for any person—
>
> (1) . . . who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport any firearm . . . in interstate . . . commerce.

18 U.S.C. § 922(g)(1) (1977). P.L. 90–618, October 22, 1968 (82 Stat. 1220). Section 922(g)(1) is part of Title 18, Chapter 44 which is entitled "FIREARMS." A subsequent paragraph of that same chapter entitled "Penalties," provides:

> (a) Whoever violates any provision of this chapter . . . shall be fined not more than $5,000, or imprisoned not more than *five years*, or both . . . ..

18 U.S.C. § 924(a) (1977), P.L. 90–351, June 19, 1968, 82 Stat. 924; P.L. 90–618, October 22, 1968, 82 Stat. 1220 (emphasis added).[2]

The Second Count of the indictment charged that on or about the same date—

. . . GIRST, having previously been convicted of a felony, did knowingly, receive, possess and transport in commerce and affecting commerce [the same .32 caliber pistol] . . . described in the First Count . . ..

The conduct was alleged to violate 18 U.S.C. § 1202(a)(1), Appendix, which provides:

(a) Any person who—

(1) has been convicted by a court of the United States or of a state or any political subdivision thereof of a felony . . . and who receives, possesses or transports in commerce or affecting commerce . . . any firearm shall be fined not more than $10,000 or imprisoned for not more than *two years*, or both.

18 U.S.C. Appendix § 1202(a)(1); P.L. 90–351, June 19, 1968, 82 Stat. 236 (emphasis added).[3]

Following his conviction by the court on all counts Girst was adjudged concurrent sentences of "five years" imprisonment on the first count and "two years" imprisonment on the second count. The Government's brief characterizes these offenses as

. . . five years for *transportation* of a firearm by a felon, [and] two years' imprisonment for *possession* of a firearm by a felon . . .

Govt. Br., p. 2. The testimony that supported the convictions on *both* of these counts was the seizure of the pistol from Girst as above described and a statement by Girst to the agent and police that on February 11, 1977, he had *carried the pistol with him when he traveled from Roanoke, Vir-*ginia, to Washington, D.C. (Tr. 33). Thus, there was no evidentiary support for the charge in the First Count that Girst did "ship" the pistol "in interstate commerce" or for the charge in the Second Count that he did "receive . . . a firearm . . . in commerce."

█ The only remaining element of either offense, apart from the charge in both counts that he did "transport [the pistol] . . . in [interstate] commerce" is the allegation that he did "possess [the pistol] . . . in commerce," this being an allegation of the Second Count. However, the evidence in support of the allegation that Girst personally did "*possess* . . . in commerce . . . a firearm" is exactly the same evidence that supports the charge that he did "*transport* in commerce . . . a firearm . . . .*" In fact, both allegations charge, in effect, the same personal conduct. And, since the *transportation* of the firearm in this case in both counts was accomplished by the "possession" referred to in the second count, the charge that Girst did "possess" the firearm "in commerce" is necessarily included in the allegation that he did "transport" the pistol. We thus conclude that the two counts do not allege two separate offenses of transportation and possession in interstate commerce as the Government asserts. Instead, in the context of this case the two counts allege essentially the same offenses, *i. e.*, the transportation in interstate commerce of a firearm by a felon on February 11, 1977. There is no evidence in this record of any *possession* of the pistol "in commerce" apart from Girst's admission that he transported the pistol in commerce.

We thus note that the two statutes, section 922(g)(1) and section 1202(a)(1), insofar as they furnish the basis for Counts One and Two, both proscribe the same offense in

---

**2.** Section 922 was amended by P.L. 90–618, October 22, 1968, 82 Stat. 1220, to provide that sentenced violators shall become eligible for parole as the Board of Parole shall determine. The amendment did not alter the provision providing for a maximum prison sentence of "five years."

**3.** Section 1202 was amended by P.L. 90–618, October 22, 1968, 82 Stat. 1236 but only to amend (b)(2) with respect to the definition of felony. The amendment did not alter the provision providing for a maximum prison sentence of "two years." Section 1202 appears in the Appendix at the back of Title 18, United States Code.

that they make it criminal for a felon to transport a firearm in interstate commerce. But while they proscribe the same offense, they provide for different maximum periods of imprisonment. Section 1202(a)(1) provides for a lesser maximum punishment of *"two years"* imprisonment. The two statutes are thus in conflict as to what the maximum sentence should be for the same offense. Girst was sentenced to serve concurrent terms of five years' imprisonment on the first count and two years' imprisonment in the second count.

This calls for a close examination of the legislative history of the two statutes. First, it is noted that the relevant sentencing provisions of both of these sections of the statute were initially enacted by the Congress as part of the same bill, *i. e.*, P.L. 90–351, June 19, 1968, 82 Stat. 233, 236. Subsequent minor amendments to these sections, later in the session by the same Congress, did not alter the maximum sentences which remained at five and two years respectively. P.L. 90–618, October 22, 1968, 82 Stat. 1223–24, 1236.

■ With section 924(a) providing for a maximum five-year sentence and section 1202(a)(1) providing for a maximum sentence of two years, the intent of Congress is clearly ambiguous as to the maximum punishment for such offense. In such circumstances we apply a corollary of the policy of lenity construing the statute as limiting the maximum punishment on Counts One and Two to two years. The best statement of the underlying policy which we apply is in *Ladner v. United States*, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958). In that case involving the assault statute the issue was whether firing a single shot at two officers constituted two offenses:

> Neither the wording of the statute nor its legislative history points clearly to either meaning. In that circumstance the Court applies a policy of lenity and adopts the less harsh meaning. "[W]hen choice has to be made between two readings of what conduct Congress has made a crime it is appropriate, before we choose the harsher alternative, to require that Congress

should have spoken in language that is clear and definite. We should not derive criminal outlawry from some ambiguous implication." *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221–222 [, 73 S.Ct. 227, 97 L.Ed. 260]. And in *Bell v. United States*, 349 U.S. 81, 83 [, 75 S.Ct. 620, 99 L.Ed. 905], the Court expressed this policy as follows: "When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." See also *Prince v. United States*, [352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370] *supra; Gore v. United States*, 357 U.S. 386, 391 [, 78 S.Ct. 1280, 1283, 2 L.Ed.2d 1405]. This policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.

358 U.S. at 177–178, 79 S.Ct. at 214.

More recently, *Simpson v. United States*, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978) applied a corollary of the same policy in determining permissible sentences:

> This guide [the policy of lenity] to statutory construction has special cogency where a court is called upon to determine the extent of the punishment to which a criminal defendant is subject for his transgressions. In this context, the principle is a corollary of the rule of lenity, an outgrowth of our reluctance to increase or multiply punishments absent a clear and definite legislative directive.

435 U.S. at 15–16, 98 S.Ct. at 914. *Simpson* held that a defendant could not be sentenced to consecutive sentences for both using a firearm to commit a felony, 18 U.S.C. § 924(c), and for robbing a bank by use of a dangerous weapon, 18 U.S.C. § 2113(a)(d), where the two counts grew out of a single act of bank robbery with a firearm. In so ruling the Court relied on the legislative history, the corollary to the policy of lenity and the rule that "gives precedence to the terms of the more specific statute where a general statute and a spe-

cific statute speak to the same concern . . . ." 435 U.S. at 15, 98 S.Ct. at 914. The conviction and sentence under the firearms statute, section 924(c), was thus held to be invalid since the bank robbery statute was the more specific. Justice Brennan also cited *United States v. Bass*, 404 U.S. 336, 347, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971) against the double punishment:

> [T]o construe the statute to allow the additional sentence authorized by § 924(c) to be pyramided upon a sentence already enhanced under § 2113(d) would violate the established rule of construction that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *United States v. Bass*, 404 U.S. 336–347 [, 92 S.Ct. 515, 30 L.Ed.2d 488] (1971).

435 U.S. at 14, 98 S.Ct. at 914.

■ The fact situation presented here by the two sections of the same Act providing for different punishments for essentially the same offense calls for the application of the corollary to the rule of lenity. This would limit the maximum term of imprisonment for the offenses here charged in Counts One and Two to the two years provided in section 1202(a)(1). Also, since there is no essential difference in the two offenses as here charged, one of the convictions must be vacated since it is unreasonable to ascribe to Congress an intent to provide that a single offense, transportation in interstate commerce of a firearm by a felon, should be twice punished. *Prince v. United States*, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957); *Heflin v. United States*, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959); *United States v. Gaddis*, 424 U.S. 544, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1976).

There is nothing in the legislative history or in the wording of the statutes to indicate that Congress intended the same conduct to constitute two offenses and to be twice punished.

■ An additional principle of statutory construction is also applicable here: "The established rule is that if there exists a conflict in the provisions of the same act, the last provision in point of arrangement must control." *Lodge 1858, American Federation of Government Employees v. Webb*, 188 U.S.App.D.C. 233, 247 n. 31, 580 F.2d 496, 510 n. 31 and cases cited (D.C. Cir.), *cert. denied*, 439 U.S. 927, 99 S.Ct. 311, 58 L.Ed.2d 319 (1978); *Inter-Continental Promotions, Inc. v. MacDonald*, 367 F.2d 293, 301 (5th Cir. 1966), *cert. denied*, 393 U.S. 834, 89 S.Ct. 105, 21 L.Ed.2d 104 (1968); *United States v. Updike*, 25 F.2d 746 (D.C. Neb.1928), *aff'd*, 32 F.2d 1 (8th Cir. 1929), *aff'd*, 281 U.S. 489, 50 S.Ct. 367, 74 L.Ed. 984 (1930); *United States v. Daniels*, 279 F. 844, 849 (2d Cir. 1922). This means that the controlling statute is section 1202(a)(1) of the Act, with its two years maximum for imprisonment, because it is later in point of arrangement.

For all the foregoing reasons we vacate the conviction and five-year sentence on Count One which relied upon sections 922(g)(1) and 924(a).

## III

As his final point, appellant contends that his conviction on Count Three,[4] which alleged a violation of D.C.Code § 22–3204,[5] cannot stand because there is no evidence that Congress intended to impose punishment for both this offense and the United

---

**4.** Count Three charged:

> On or about February 11, 1977, within the District of Columbia, CALVIN LINWOOD GIRST, did carry, openly and concealed on or about his person, and not in his dwelling place and not in his place of business and not on other land possessed by him, a dangerous weapon, capable of being so concealed, that is, a .32 caliber pistol without a license therefor issued as provided by law. This is the same weapon described in the First and

Second Counts of this indictment. (Violation of Title 22, D.C.Code, Section 3204).

**5.** D.C.Code § 22–3204 provides:

> No person shall within the District of Columbia carry either openly or concealed on or about his person, except in his dwelling house or place of business or on other land possessed by him, a pistol, without a license therefor issued as hereinafter provided, or any deadly or dangerous weapon capable of being so concealed. . . .

States Code offense charged in Count Two.[6] Appellant claims support for his argument in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932), which prohibits imposition of double punishment "if the two statutory provisions constitute the 'same offense' . . . ." *United States v. Dorsey*, 192 U.S.App.D.C. 313, at 333, 591 F.2d 922, at 942 (D.C. Cir. 1978). We also consider whether imposition of multiple punishment is permissible under *Simpson v. United States*, 435 U.S. 6, 12, 98 S.Ct. 909, 913, 55 L.Ed.2d 70 (1978), which was decided after this case was argued. *Simpson* focuses on "whether Congress intended to subject the defendant to multiple penalties for the single criminal transaction in which he engaged." 435 U.S. at 12, 98 S.Ct. at 913. We hold that punishing appellant for the crimes charged in both Count Two and Three is consistent with *Blockburger* and *Simpson*.

■ Justice Powell's majority opinion in *Brown v. Ohio*, 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977) contains a recent articulation of the *Blockburger* rule:

> The established test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment was stated in *Blockburger v. United States*, 284 U.S. 299, 304 [, 52 S.Ct. 180, 182, 76 L.Ed. 306] (1932):
>
> "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. . . ."

This test emphasizes the elements of the two crimes. "If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes. . . ." *Iannelli v. United States*, 420 U.S. 770, 785 n. 17 [, 95 S.Ct. 1284, 1294 n. 17, 43 L.Ed.2d 317] (1975).[7]

The critical question, therefore, is whether each count "requires proof of a fact that the other does not. . . ." *Id.*

■ As stated above, section 1202(a)(1) makes it a federal crime for a convicted felon to possess or transport a firearm in interstate commerce; and section 22–3204 makes it a crime in the District of Columbia for any person without a license to carry a pistol or dangerous weapon that is capable of being concealed. It is obvious from a mere comparison of the two statutes and counts that each "requires proof of a fact which the other does not." To show a violation of section 1202(a)(1) requires proof that the firearm was (1) transported (2) by a felon (3) in interstate commerce. The section 22–3204 charge requires proof of (1) possession in the District of Columbia of a concealable dangerous weapon (2) without a license. None of these enumerated elements is required to be proved with respect to the other alleged offense. The statutes

---

**6.** Since we have already vacated the conviction and sentence on Count One, we need not consider whether Congress intended to subject a criminal defendant to liability under both 18 U.S.C. § 922(g)(1) (Count One) and 22 D.C. Code § 3204 (Count Three). Nor is it necessary to consider whether these statutes define separate offenses under *Blockburger*.

**7.** A significant footnote (17) in *Iannelli* states:
The test articulated in *Blockburger v. United States*, 284 U.S. 299 [, 52 S.Ct. 180, 76 L.Ed. 306] (1932), serves a generally similar function of identifying congressional intent to impose separate sanctions for multiple offenses arising in the course of a single act or transaction. In determining whether separate punishment might be imposed, *Block-*

*burger* requires that courts examine the offenses to ascertain "whether each provision requires proof of a fact which the other does not." *Id.*, at 304 [, 52 S.Ct. 180]. As *Blockburger* and other decisions applying its principle reveal, see, *e. g., Gore v. United States*, 357 U.S. 386 [, 78 S.Ct. 1280, 2 L.Ed.2d 1405] (1958); *American Tobacco Co. v. United States*, 328 U.S. 781, 788–789 [, 66 S.Ct. 1125, 90 L.Ed. 1575] (1946), the Court's application of the test focuses on the statutory elements of the offense. If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes. See *Gore v. United States, supra.* 420 U.S. at 785, 95 S.Ct. at 1294.

thus create separate crimes and both offenses can be charged against the same person even though the acts complained of arise in the same transaction.

In addition, we hold, in accordance with *Simpson*, that Congress intended to subject appellant to dual sentences. First, this intent can be inferred when, as here, the statutes were enacted at different times and constitute parts of sections of independent criminal codes. Second, Congress' decision to approach "the firearms problem through a variety of federal regulatory means . . . supports an inference that in most cases congressional intent favors multiple firearms convictions." *United States v. Dorsey, supra*, 192 U.S.App. D.C. at 331, 591 F.2d at 940.

Finally, section 1202(a)(1) applies only to acts affecting interstate commerce. This indicates that Congress did not intend to interfere with sentences imposed under laws of strictly local application like 22–3204. Rather, U.S.Code section 1202(a)(1) was designed to "augment" the D.C. statute. *Dorsey, supra*, 192 U.S.App.D.C. at 331, 591 F.2d at 940. Therefore, separate punishments under the United States Code offense (18 U.S.C. Appendix § 1202(a)(1)) and the D.C.Code offense (§ 22–3204) are consistent with Congressional intent. Since conviction and punishment under Counts Two and Three are not contrary to *Blockburger* and *Simpson*, we affirm the judgments of conviction.

8. *United States v. Gaddis*, 424 U.S. 544, 549, 551, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1976).

\* Consolidated with the following cases (identified by this Circuit's case number and petitioner), in all of which the Environmental Protection Agency is the respondent: No. 78–1008, American Petroleum Institute, et al.; No. 78–1525, Part II, Environmental Defense Fund, Inc.; No. 78–1590, Part II, Hampton Roads Energy Company; No. 79–1591, Alabama Power Company, et al.; No. 78–1592, Alabama Power Company, et al.; No. 78–1595, American Petroleum Institute, et al.; No. 78–1596, American Petroleum Institute, et al.; No. 78–1610, Part II, The Montana Power Company, et al.; No. 78–1752, District of Columbia, a municipal corporation; No. 78–1801, National Coal Association; No. 78–1802, National Coal Association; No. 78–1805, Mining and Reclamation Council of America, Inc.; No. 78–1806, Mining and Reclamation Council of America, Inc.; No.

The case is remanded to the District Court for further proceedings consistent with this opinion.[8]

*Judgment accordingly.*