**UNITED STATES of America, Appellee,**

v.

**Michael Monroe BASS, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Charles Earl PRICE, Appellant.**

Nos. 85–2034, 85–2035.

United States Court of Appeals, Eighth Circuit.

Submitted March 12, 1986.

Decided July 1, 1986.

Donald R. Cooley, Springfield, Mo., for Michael Monroe Bass.

R. Steven Brown, Springfield, Mo. for Charles Earl Price.

Robin J. Aiken, Springfield, Mo., for appellee.

Before JOHN R. GIBSON and WOLL-MAN, Circuit Judges, and HARPER,* Senior District Judge.

JOHN R. GIBSON, Circuit Judge.

Three principal issues are before us in these appeals. First, whether Michael Monroe Bass and Charles Earl Price may be convicted in the same proceeding both of transporting a stolen firearm in interstate commerce, in violation of Title IV of the Omnibus Crime Control Act, 18 U.S.C. §§ 922(i), 924 (1982) and 18 U.S.C. § 2 (1982), and of being a felon in possession of firearms, in violation of Title VII of the Omnibus Crime Control Act, 18 U.S.C. app. § 1202(a)(1) (1982) and 18 U.S.C. § 2. Second, whether the district court[1] erred in admitting evidence of other crimes committed during the criminal transaction giving rise to the offenses charged in this indictment. Third, whether the district court erred in sentencing Bass under section 1202(a) for a conviction under section 922(i)

of the Act. We hold that the double jeopardy clause does not prohibit separate sentences on Counts II and III of appellants' indictment and that the district court did not err in denying appellant Price's motion to suppress the other crimes evidence. We conclude, however, that the district court erred in sentencing Bass under section 1202(a) of the Act for his conviction under section 922(i), and remand to the district court for sentencing on Count II under section 924(a) of the Act.

On April 4, 1985, Bass and Price escaped from the Tucker Prison Farm, Tucker, Arkansas, where they both were serving felony sentences. A 1977 Ford truck owned by the Arkansas Department of Correction was reported missing on the same day. Price and Bass were seen in the missing vehicle on that day; Price was driving the vehicle. The truck later was found abandoned.

Harold Reeder testified that on April 6, 1985, he made a security check of a house in Greer's Ferry, Arkansas, and was confronted by Bass and Price with rifles in their hands. Bass and Price tied him up and stole his 1979 International Scout truck. The owner of the house identified two .22 caliber rifles, a bow and arrow and a hunting knife later found in appellants' possession as stolen from his home.

Guy Pace testified that on April 6, 1985, at about 6:30 p.m., he saw the 1979 Scout in Taney County, Missouri. The truck was parked on the shoulder of a highway; Bass and Price were working onthe engine and Pace stopped to render assistance. According to Pace, as he inspected the engine, Bass and Price displayed the two stolen rifles and Bass threatened to kill him. He testified that Bass and Price took him into the woods and menaced him with the stolen weapons and the bow and arrow. Bass and Price then stole Pace's pick-up truck, taking the two stolen rifles with them, and left Pace with the Scout stolen from Reeder.

---

* The HONORABLE ROY W. HARPER, Senior United States District Judge for the Eastern and Western Districts of Missouri.

1. The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri.

Shortly thereafter, Mr. and Mrs. John King stopped to assist Pace. As Pace was getting into the Kings' car, Bass and Price returned in Pace's pick-up and stopped in front of the Kings' car. One of the appellants fired at the King vehicle, hitting the windshield. Pace testified that Price told him to get into the pick-up truck and again threatened his life. Bass took custody of the Kings and their two children. As Pace got into the pick-up with Price, he grabbed Price's rifle, a shoot-out occurred, and Pace, Bass and Price all were wounded.

A grand jury returned a three-count indictment against Bass and Price. Count I charged them with willfully and knowingly transporting a stolen vehicle, the Scout truck, in interstate commerce, in violation of 18 U.S.C. §§ 2, 2312. Count II charged them with knowingly transporting in interstate commerce firearms which they knew to be stolen, in violation of 18 U.S.C. §§ 2, 922(i), and 924(a). Count III charged them with possession of firearms which were in or affected commerce, having been convicted of felonies, in violation of 18 U.S.C. app. § 1202(a)(1) and 18 U.S.C. § 2. Both were convicted on all counts. Bass was sentenced to terms of three years on Count I and fifteen years on Counts II and III, to run concurrently. The sentences on Counts II and III were entered under 18 U.S.C. app. § 1202(a), which authorizes an enhanced sentence of fifteen years without possibility of parole for persons having three previous robbery convictions. Price was sentenced to terms of five years on Counts I and II and two years on Count III, all to run consecutively.

## I.

Both Bass and Price argue that their conviction on charges of transporting stolen firearms in interstate commerce, in violation of section 922(i), and of being felons in possession of firearms, in violation of section 1202(a)(1), constitutes multiple punishment for a single offense and, therefore, violates the double jeopardy clause of the fifth amendment. The appellants maintain that the two statutes describe the same offense because the same acts violate both statutes: the same guns were involved in both counts, and the interstate commerce requirement of both offenses is satisfied by their movement from the State of Arkansas into the State of Missouri.

 The fifth amendment proscribes being "twice put in jeopardy of life or limb" for the same offense. U.S. Const. Amend. V. The Supreme Court has interpreted this provision to proscribe both multiple trials and multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). In *Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), the Court made clear, however, that the double jeopardy clause bars multiple punishment for a single offense in one proceeding only when the legislature did not intend cumulative punishment. *Id.* at 366, 103 S.Ct. at 678 ("[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does not more than prevent the sentencing court from prescribing greater punishment than the legislature intended"). When the same act violates two distinct statutory provisions, whether the legislature intended to create two separately punishable offenses or one is determined by the test set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The *Blockburger* inquiry is whether each statute requires proof of an additional fact which the other does not. *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182. The Supreme Court has held that *Blockburger* states a rule of statutory construction, not a constitutional requirement. *Missouri v. Hunter*, 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983). Therefore, the *Blockburger* rule is not controlling where there is clear indication of a contrary legislative intent. *Hunter*, 459 U.S. at 368, 103 S.Ct. at 679; *Albernaz v. United States*, 450 U.S. 333, 340, 101 S.Ct. 1137, 1142, 67 L.Ed.2d 275 (1981). Thus, in the case before us, appellants' convictions in a single proceeding under sections 922(i) and 1202(a)(1) of the Omnibus Crime Control

Act violate the double jeopardy clause only if Congress intended that these statutes describe a single offense and there is no evidence that Congress intended to impose cumulative punishment for violation of these provisions.

■ Applying the *Blockburger* test to the present case, it is evident that sections 1202(a)(1) and 922(i) of the Omnibus Crime Control Act describe separate offenses. To establish a violation of section 1202(a)(1), the government must prove that a person who has previously been convicted of a felony in a federal or state proceeding received, possessed, or transported a firearm which had been in or affected commerce. To establish a violation of section 922(i), the government must prove that a person (whether or not a convicted felon) transported or shipped in interstate commerce a stolen firearm or ammunition. Proof of a section 1202(a)(1) offense does not necessarily establish a section 922(i) offense, since the latter requires proof that the weapon was stolen. Likewise, proof of a section 922(i) violation does not necessarily prove a violation of 1202(a)(1), since the latter requires proof that the perpetrator was a convicted felon.

The appellants stress the Court's decision in *Ball v. United States*, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985), to support the argument that sections 1202(a)(1) and 922(i) create only one offense. In *Ball*, the defendant was convicted of receiving a firearm in violation of 18 U.S.C. § 922(h)(1), and possessing that firearm in violation of 18 U.S.C. app. § 1202(a)(1). Applying the *Blockburger* test, the Court found "proof of illegal receipt of a firearm *necessarily* includes proof of illegal possession of that weapon." *Id.* 105 S.Ct. at 1672 (emphasis in original).

Given this unavoidable overlap in the statutes, the Court concluded that Congress did not intend these provisions to proscribe separate offenses. Finding nothing in the legislative history to rebut this determination, the Court concluded that when a single act establishes the receipt and the possession of a firearm, the double jeopardy clause bars defendant's conviction under both sections 922(h)(1) and 1202(a)(1) of the Omnibus Crime Control Act.[2] *Id.* at 1674.

We find *Ball* clearly distinguishable. The holding in *Ball* is specific to the sections of the Omnibus Crime Control Act in issue in that case. As discussed above, the *Blockburger* test yields a different result when applied to sections 922(i) and 1202(a)(1) of the Act. Proof of a section 922(i) violation does not *necessarily* constitute proof of a section 1202(a) violation. Therefore, conviction on separate charges in a multicount indictment charging violation of these sections of the Act does not violate the double jeopardy clause.[3]

Our decision is supported by the legislative history of Title VII of the Omnibus Crime Control Act. The legislative history shows that Congress intended Title VII of the Act to complement Title IV of the Act. *See United States v. Batchelder*, 442 U.S. 114, 120, 99 S.Ct. 2198, 2202, 60 L.Ed.2d 755 (1979); *Scarborough v. United States*, 431 U.S. 563, 573, 97 S.Ct. 1963, 1968, 52 L.Ed.2d 582 (1977). The Court, in *Scarborough v. United States*, found that the essence of Congress' intent under section 1202(a), and the intent stressed in the legislative history, was to punish the possession of weapons by people "who have no business possessing [them]." *Id.* at 577, 97 S.Ct. at 1970 (*quoting* 114 Cong. Rec. 13869 (1968)). The focus on separately

---

**2.** The court made clear, however, that a defendant may properly be charged and tried in a multi-count indictment under both sections of the statute. *Ball v. United States*, 105 S.Ct. at 1674.

**3.** Appellants also argue that *United States v. Girst*, 636 F.2d 316 (D.C.Cir.), *vacated* 645 F.2d 1014 (1979), *disapproved of Ball v. United States*, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740

(1985), supports the argument that no distinction is made between possession and transportation for purpose of double jeopardy analysis. However, the Supreme Court's opinions in *Ball v. United States*, 105 S.Ct. at 1671 n. 7, and *United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979), clearly undermine the *Girst* court's analysis on which appellants rely.

punishing possession is made clear in the following statement by Senator Long in introducing the amendment:

> Of all the gun bills that have been suggested, debated, discussed and considered, none except this Title VII attempts to bar possession of a firearm from persons whose prior behaviors have established their violent tendencies * *.

> * * * Under Title VII, every citizen could possess a gun until commission of his first felony. Upon his conviction, however, Title VII would deny every assassin, murderer, thief and burglar of [sic] the right to possess a firearm in the future * * *.

*Scarborough*, 431 U.S. at 573, 97 S.Ct. at 1968 (quoting 114 Cong. Rec. 13868, 14773 (statement of Senator Long)).

Section 1202(a)(1), therefore, describes categories of persons for whom it is an offense to possess any weapon which has been in or affected commerce. Section 922 does not separately punish possession of a weapon by a convicted felon, and 922(i) punishes only the transportation of a stolen weapon. Thus, despite the broad areas of overlap between Titles IV and VII of the Act, this is one area in which section 1202(a)(1) clearly complements section 922. We thus conclude that Congress intended to separately punish possession of a weap-

on by a felon, that this purpose is distinct from that underlying section 922(i), and that a conviction in one proceeding under both sections does not violate the double jeopardy clause.

■ Bass, additionally, challenges the prosecutor's decision to proceed under section 922(i), rather than under 922(g) or 922(h),[4] arguing that the government, by carefully selecting the provision under which to proceed, was able to seek two separate convictions where only one would otherwise be appropriate. In *United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979), the Supreme Court stated "[W]hen an Act violates more than one criminal statute, the government may prosecute under either so long as it does not discriminate against any class of defendants." *Id.* at 123–24, 99 S.Ct. at 2203–04. In *Ball* the Supreme Court clarified that *Batchelder* reaffirms the government's discretion to charge under one statute rather than another *or* to proceed under several where an act violates more than one criminal statute. *Ball*, 105 S.Ct. at 1617 n. 7. Bass does not allege discriminatory prosecution, and the record is devoid of any such inference. This contention is, therefore, without merit.[5]

### II.

■ As a separate basis for relief, Bass argues that his conviction on Count II is

---

4. These subsections of the Act punish the convicted felon who ships or receives a firearm in interstate commerce regardless of whether the firearm was stolen.

5. We likewise find without merit Bass' challenge to the constitutionality of the § 1202(a) enhance penalty provision.

 Bass argues that the enhanced punishment provision in § 1202(a) violates the equal protection clause and constitutes cruel and unusual punishment. He contends that it singles out persons with three prior robbery convictions for additional punishment without a rational basis. For emphasis, he points out that his co-defendant Price has a more extensive criminal record than he does but was not subject to enhanced punishment for his conviction under § 1202(a)(1) because he did not have three prior robbery convictions.

 The equal protection clause does not require identical treatment of all persons, but only that

there be a rational basis for the statutory distinctions made. *Marshall v. United States*, 414 U.S. 417, 422, 94 S.Ct. 700, 704, 38 L.Ed.2d 618 (1974). In adopting the enhancement provision of § 1202(a), Congress sought to address the proliferation of burglaries and robberies, and, specifically, to punish the career robber or burglar who it thought committed the vast proportion of these crimes. *See* H.R. No. 98–1073, 98th Cong., 2d Sess. 3 (1984) (statement of Senator Specter in introducing the enhancement provision).

 Since there is a rational basis for the statutory distinction made, the recidivist enhanced punishment provision of § 1202(a) does not violate the equal protection clause. We likewise have considered Bass' assertion that the enhanced punishment provision constitutes cruel and unusual punishment and find it to be without merit.

---

**1311**

invalid because the district court erroneously entered sentence on that count under 18 U.S.C. app. § 1202(a), rather than under 18 U.S.C. § 924(a), the provision under which Count II was charged and tried. As discussed above, Count II of Bass' indictment charged him with transporting a stolen firearm in interstate commerce, knowing it to be stolen, in violation of 18 U.S.C. § 922(i). 18 U.S.C. § 924(a) contains the penalty provision for violation of section 922 and imposes a maximum penalty of imprisonment for five years and a $5,000 fine for violation of section 922. Section 1202(a)(1) states the charge which is the basis of Count III—transporting in commerce any firearm, having been convicted of a felony. The maximum enhanced penalty under this section is imprisonment for fifteen years and a fine of $25,000. The district court sentenced Bass on Count II under this enhancement provision. The record is devoid of any reason why the district court, even after the prosecuting attorney brought the discrepancy to his attention, chose to sentence Bass under section 1202(a)(1) rather than section 924(a).

In *United States v. Batchelder,* 442 U.S. 114, 119, 99 S.Ct. 2198, 2201, 60 L.Ed.2d 755 (1979), the Supreme Court held that "[S]ection 924(a) alone delimits the appropriate punishment for violations of [section] 922(h)." The Court stressed that Congress intended that Title IV, which contains sections 922 and 924, and Title VII, which contains section 1202, of the Omnibus Crime Control Act be applied independently, and that the penalty provision of each title is specific to violations of that respective title. *Id.* at 122, 99 S.Ct. at 2203.

The government argues that we need not address this issue on the strength of the concurrent sentence doctrine. Under this doctrine, where a defendant receives concurrent sentences on plural counts of an indictment, and where the conviction on one count is valid, a reviewing court need not pass on the validity of the defendant's conviction on another count if a ruling in defendant's favor would not reduce the time the defendant is required to serve or otherwise prevent some prejudice to the defendant. *United States v. Smith,* 601 F.2d 972, 973–74 (8th Cir.), *cert. denied,* 444 U.S. 879, 100 S.Ct. 166, 62 L.Ed.2d 108 (1979); *Sanders v. United States,* 541 F.2d 190, 193 (8th Cir.1976), *cert. denied,* 429 U.S. 1066, 97 S.Ct. 796, 50 L.Ed.2d 784 (1977). Courts have long expressed doubt of the propriety of applying the concurrent sentence doctrine in cases on direct appeal. *See Benton v. Maryland,* 395 U.S. 784, 793 n. 11, 89 S.Ct. 2056, 2062 n. 11, 23 L.Ed.2d 707 (1969) (expressly reserving the question whether a total abolition of the concurrent sentence doctrine may be appropriate in cases heard on direct appeal); *see also Sanders,* 541 F.2d at 194; *United States v. Neff,* 525 F.2d 361, 363 (8th Cir.1975) (Lay, J., concurring). Without resolving this question for general applicability, we decline to apply the concurrent sentence doctrine in this instance. We therefore remand the case to the district court with instructions to enter sentence on Count II under 18 U.S.C. § 924(a) and to correct the record appropriately.

### III.

We now address Price's contention that the district court erroneously denied his motion to exclude from the trial evidence of the escape from prison, the theft of the prison's truck, the robbery at Greer's Ferry, and the acts culminating in the shooting incident. Price essentially contends that the prosecutor entered cumulative and irrelevant evidence concerning offenses not charged in the indictment, and that this evidence was unduly prejudicial under Federal Rule of Evidence 403, thus denying him his constitutional right to a fair and impartial trial. The government contends that the evidence was admissible under rule 404(b) to prove the appellants' identity, knowledge, and the interstate transportation of the weapons and vehicle involved. The government also argues that the evidence was admissible because it was an integral part of the immediate context of the crimes charged. In denying Price's

motion in limine, the district court found that the challenged evidence was admissible because it was probative of identity and because the occurrences all constituted an integral part of the overall criminal conduct giving rise to the indictment.

■ We have held that where evidence of other crimes is "so blended or connected, with the one[s] on trial as that proof of one incidentally involves the other[s]; or explains the circumstances; or tends logically to prove any element of the crime charged," *United States v. Derring*, 592 F.2d 1003, 1007 (8th Cir.1979), it is admissible as an integral part of the immediate context of the crime charged. *Id.; see also United States v. Turpin*, 707 F.2d 332, 336 (8th Cir.1983). When the other crimes evidence is so integrated, it is not extrinsic and therefore is not governed by Rule 404(b). *United States v. DeLuna*, 763 F.2d 897, 913 (8th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985); *accord United States v. Williford*, 764 F.2d 1493, 1498–99 (11th Cir.1985); *United States v. Torres*, 685 F.2d 921, 924 (5th Cir.1982). We hasten to add, however, that taking such evidence out of the scope of 404(b) analysis does not remove all limits on the admission of detailed wrongful acts testimony. The dictates of rule 403 must still be applied to ensure that the probative value of this evidence is not outweighed by its prejudicial value. *See generally* J. Weinstein & M. Berger *Evidence*, ¶ 404(10) at 404–80 (1985).

■ All the evidence which Price challenges was an integral part of an extended criminal transaction, extending over several days, which gave rise to the offenses charged. Looking to rule 403, we conclude that the evidence clearly is probative of material elements of the charged offenses. The testimony regarding Bass and Price's escape from the Arkansas Corrections Facility and the theft of the Arkansas Department of Corrections vehicle was relevant to establish identity [6] and the appellants' movement in interstate commerce, an element of all three counts of Price's indictment. Likewise, Reeder's testimony regarding the fact that the defendants confronted him with weapons in the Greer's Ferry robbery is clearly relevant to Count I of the complaint—which charges theft of Reeder's truck—and to Counts II and III of the complaint—which charge knowingly transporting stolen weapons in interstate commerce. The evidence is probative of Price's knowledge that the truck was stolen, as well as evidence that the weapons were stolen and that the defendant knew that they were stolen.[7] Finally, Pace's testimony regarding his encounters with Bass and Price in Missouri was probative of the transportation of the stolen vehicle and weapons in interstate commerce.

■ The task of balancing the probative value of this evidence against its prejudicial value is primarily for the trial court, and we normally defer to its judgment. *United States v. Boykin*, 679 F.2d 1240, 1244 (8th Cir.1982); *United States v. Derring*, 592 F.2d at 1007 n. 6; *United States v. Peltier*, 585 F.2d at 32. The evidence was relevant to important elements of the

---

**6.** Price contends that the government refused his offer to stipulate to identity and that, had the offer been accepted, the other crimes evidence would then have been unnecessary. We have held that, as a general rule, the government is not bound by the defendant's offer to stipulate. *See United States v. Booker*, 706 F.2d 860, 862 (8th Cir.), *cert. denied*, 464 U.S. 917, 104 S.Ct. 283, 78 L.Ed.2d 261 (1983); *United States v. Peltier*, 585 F.2d 314, 324 (8th Cir.1978), *cert. denied*, 440 U.S. 945, 99 S.Ct. 1422, 59 L.Ed.2d 634 (1979); *compare United States v. Pedroza*, 750 F.2d 187, 201 (2d Cir.1984) (district court has discretion to allow evidence of other crimes despite defendant's offer to stipulate so that government may provide a complete explanation of crime charged) *and United States v. Mohel*, 604 F.2d 748, 754 (2d Cir.1979) (once an

unequivocal and sufficient stipulation is made on an element of an offense, other crimes evidence may not be admitted to prove that point). However, a proper rule 403 balancing analysis will incorporate some assessment of the need for the allegedly prejudicial information in light of a valid stipulation. We need not resolve that question in this case, however, given that the challenged evidence is probative of issues other than identity.

**7.** In fact, to the extent that the testimony concerns the actual theft of the truck, it is probative of the crime charged, not solely uncharged crimes, and therefore is not other crimes evidence. *DeLuna*, 763 F.2d at 913.

offenses charged, and was closely intertwined with the entire criminal transaction upon which Price and Bass jointly embarked. We are somewhat troubled by the admission of Pace's detailed testimony regarding Bass and Price's repeated threats on his life and by Reeder's testimony that he was tied up during the Greer's Ferry robbery. The testimony was graphic and may have been more detailed than necessary to establish the points on which it was relevant. The line between permissible evidence which is an inextricable part of a criminal transaction and unduly prejudicial evidence proscribed by 403 is thin. The trial court must carefully consider the value of the evidence in the full context of the government's proof. With due regard to the purpose of rule 403 to protect the defendant from unfair prejudice, we do not believe that, in this case, the probative value of the evidence was substantially outweighed by its prejudicial value. Concluding that there was no abuse of discretion in admitting this evidence, we affirm the district court's judgment.

Accordingly, we affirm Price's conviction in all respects. We affirm Bass' conviction on Counts I and III, but remand Count II to the district court for entry of sentence under section 924(a).