**UNITED STATES of America, Appellee,**

v.

**Donald Eugene PETARY, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Andrew Wessel SIX, Appellant.**

**Nos. 87–2485, 87–2486.**

United States Court of Appeals, Eighth Circuit.

Submitted May 13, 1988.

Decided Sept. 14, 1988.

William Price, Des Moines, Iowa for Petary.

Elizabeth Kruidenier, Des Moines, Iowa, for Six.

Keith Hammond, Asst. U.S. Atty., Des Moines, Iowa, for appellee.

Before HEANEY and McMILLIAN, Circuit Judges, and HILL,* Senior District Judge.

McMILLIAN, Circuit Judge.

These cases were consolidated for purposes of appeal. Donald Eugene Petary and Andrew Wessel Six appeal from final judgments entered in the District Court[1] for the Southern District of Iowa upon jury verdicts finding each guilty of kidnapping in violation of 18 U.S.C. § 1201. Petary and Six received identical sentences of two

---

* The Honorable Irving Hill, Senior United States District Judge for the Central District of California, sitting by designation.

1. Petary and Six were tried at the same time but before separate judges and juries. Petary was tried before the Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa, and Six was tried before the Honorable Harold D. Vietor, Chief Judge, United States District Court for the Southern District of Iowa.

hundred years imprisonment with possibility of parole after sixty-six years, pursuant to 18 U.S.C. § 4205(b)(1), and each was ordered to pay a special assessment of $50 and restitution in the amount of $1331.40. For reversal, Petary argues that the district court erred in denying his pre-trial motion to suppress certain statements and in imposing a two-hundred year sentence. For reversal, Six argues that the district court erred in (1) admitting evidence of other crimes, (2) denying his motion for change of venue, (3) denying his motion for a mistrial, and (4) admitting photographic evidence. Six further argues that the cumulative effect of these errors denied him a fair trial. For the reasons discussed below, we affirm the judgments of the district court.

In Ottumwa, Iowa, on the night of April 10, 1987, Mrs. Stella Allen accompanied Six and his uncle Petary on a purported test drive of a pick-up truck that the Allen family had offered for sale. Mrs. Allen was slightly familiar with Petary because he had previously lived in the same trailer court. During the test drive and after driving a distance down the highway, Six pulled the truck off the road and stopped, indicating that he wanted Petary to drive. As the two men switched places, Six pulled a knife on Mrs. Allen, threatened her with bodily harm and bound her hands with duct tape. They then returned to the Allens' trailer home.

Petary and Six confronted Mr. Donald Allen outside the trailer and ordered him back into the trailer home by threatening to kill Mrs. Allen. Six had a knife pointed at Mrs. Allen's neck. When they were inside the trailer, Six taped and bound Mr. Allen to a chair. Six awakened the Allens' twelve-year-old daughter, Kathy Allen, in the process of taping her mouth shut. Six then raped the Allens' seventeen-year-old daughter, Christine Allen, who was approximately six months pregnant. Then both men tried to abduct the entire Allen family.

Petary forced the two Allen daughters out of the trailer and into his station wagon. Six forced Mrs. Allen at knifepoint out of the trailer. While Six was holding Mrs. Allen, there was a scuffle and Mr. Allen and Christine Allen escaped. Kathy Allen remained in the station wagon. Six reacted by slashing Mrs. Allen's throat.[2] The two men then fled in the station wagon, taking Kathy Allen with them.

On April 11, 1987, near Moscow, Texas, both men were apprehended and arrested. Kathy Allen was missing. After his arrest, local law enforcement officers informed Petary of his *Miranda* rights, and he signed a waiver of rights. He was then interviewed by Federal Bureau of Investigation (FBI) agents. Before interrogating him, the FBI agents repeated the *Miranda* warnings. Petary initially expressed some reluctance, but he agreed to talk about "some things and some he would not." The FBI agents told Petary that Six was currently undergoing questioning and was talking and would probably place full blame for the crime on him. Unknown to Petary, Six had refused to cooperate and did not make any statements. The FBI agents urged Petary to reveal the nature and extent of his participation in the kidnapping and pressed him for details as to Kathy Allen's whereabouts. Several hours later, after the FBI agents told Petary that Mrs. Allen was still alive, Petary provided additional information that enabled the authorities to locate Kathy Allen's body.[3]

On April 22, 1987, Petary and Six were indicted and charged in a single count indictment with kidnapping Kathy Allen in violation of 18 U.S.C. §§ 1201, 2. Petary and Six were tried separately and each was found guilty. These appeals followed.

### No. 87–2485 *United States v. Donald Eugene Petary*

■ Petary first argues that the district court erred in denying his motion to suppress certain statements because the state-

---

2. Mrs. Allen survived, but approximately fifty stitches were required to close the wound.

3. Kathy Allen was found near Kirksville, Missouri, on April 12, 1987. An autopsy revealed that she had died from a knife wound on the right side of her neck that had severed her carotid artery.

ments were not made voluntarily. Petary argues that before he was interrogated by the FBI agents, he had not slept for approximately twenty-four hours and had consumed beer but no food. He argues that four agents interrogated him for six to seven hours despite his expressed reluctance to talk and induced him to talk by lying to him about their interrogation of Six and by promising him that if he cooperated, his cooperation would be made known to the proper authorities. Petary contends that his incriminating statements were induced by the FBI agents' misrepresentations and therefore were involuntary. We do not agree.

The voluntariness of statements made during custodial interrogation is subject to plenary review. *Miller v. Fenton*, 474 U.S. 104, 112, 106 S.Ct. 445, 451, 88 L.Ed.2d 405 (1985); *United States v. Wilson*, 787 F.2d 375, 380 (8th Cir.), *cert. denied*, 479 U.S. 857, 107 S.Ct. 197, 93 L.Ed.2d 129 (1986). The nature of this review is a flexible consideration of the totality of the circumstances to determine whether the challenged statements were the result of an overborne will. *Rachlin v. United States*, 723 F.2d 1373, 1377 (8th Cir.1983). This inquiry requires an examination of the details of the interrogation, the tactics used, and the personal characteristics of the defendant. *Id.* "Misrepresentations on the part of the government do not make a statement per se involuntary." *Flittie v. Solem*, 775 F.2d 933, 945 (8th Cir.1985) (banc) (citations omitted), *cert. denied*, 475 U.S. 1025, 106 S.Ct. 1223, 89 L.Ed.2d 333 (1986). It is but one factor to be considered in reviewing the totality of the circumstances. *See Frazier v. Cupp*, 394 U.S. 731, 739, 89 S.Ct. 1420, 1424–1425, 22 L.Ed.2d 684 (1969).

Here, Petary was advised of his *Miranda* rights at least twice and he signed a waiver; he does not now claim to have misunderstood those rights. Petary is a competent adult and was familiar with arrest procedures, factors which indicate that he would not easily fall prey to FBI interrogation tactics. Further, the interrogation had an immediate investigatory objective. At the time of the interrogation, the FBI agents were unaware of Kathy Allen's condition or her whereabouts. Petary provided the information about where Kathy Allen could be found only after he was told that Mrs. Allen was still alive. A logical conclusion would be that Petary decided to provide provide this information because he thought he could still avoid a murder charge if he helped the authorities locate Kathy Allen while she, too, had a chance for survival. Taken together, the totality of the circumstances indicate that Petary acted knowledgeably and freely when he made the incriminating statements. We thus hold that the district court did not err in denying Petary's motion to suppress these statements.

■ Petary next argues that the district court's imposition of a two-hundred year sentence without possibility of parole for sixty-six years was in excess of statutory limits and an abuse of discretion. Petary contends that several factors support a less severe sentence: his role in the kidnapping was relatively passive, he is fifty years old, he has been diagnosed as an alcoholic, and he provided information that helped the authorities find Kathy Allen.

In general, a sentence is not subject to review unless it exceeds statutory limits, violates constitutional or procedural requirements, or shows that the district court manifestly or grossly abused its discretion. *E.g., United States v. Rosandich*, 729 F.2d 1512, 1512 (8th Cir.1984) (per curiam); *United States v. Hollis*, 718 F.2d 277, 279 (8th Cir.1983), *cert. denied*, 465 U.S. 1036, 104 S.Ct. 1309, 79 L.Ed.2d 707 (1984). The penalty for the crime of kidnapping is "imprisonment for any term of years or for life." 18 U.S.C. § 1201. Title 18 U.S.C. § 4205(b)(1) authorizes the sentencing judge, when required by "the ends of justice and the best interest of the public," to set the minimum number of years that a prisoner must serve before he or she is eligible for parole, so long as the minimum term does not exceed one-third of the total sentence length. In *Rothgeb v. United States*, 789 F.2d 647, 652 (8th Cir.1986), this court affirmed a sentence requiring the defendant to serve longer than ten

years before he is eligible for parole under § 4205(b)(1). *See also United States v. O'Driscoll,* 761 F.2d 589, 600 (10th Cir. 1985), *cert. denied,* 475 U.S. 1020, 106 S.Ct. 1207, 89 L.Ed.2d 320 (1986) (three-hundred-year sentence without possibility of parole for ninety-nine years held within statutory bounds for kidnapping conviction). Petary's two-hundred-year sentence was within the statutory limits for the crime of kidnapping and thus not illegal. *Id.* at 598.

Nor did the district court abuse its discretion in sentencing Petary to a term of two hundred years without possibility of parole for sixty-six years. The crime was particularly brutal, Petary has a long criminal record, and the record shows that his role in the kidnapping was an active, not passive, one.

No. 87–2486 *United States v. Andrew Wessel Six*

■ Six first argues that the district court erred in admitting evidence of other criminal acts that occurred before the kidnapping. Six specifically argues that evidence about restraining Mr. and Mrs. Allen with duct tape, the rape of Christine Allen, and the slashing of Mrs. Allen's throat was improperly admitted. Six argues that this evidence was not admissible as evidence of other crimes pursuant to Fed.R.Evid. 404(b), or, in the alternative, was not admissible under Fed.R.Evid. 403 because its probative value was substantially outweighed by its prejudicial impact.

The government argues that in the present case the evidence of other crimes was not admitted under Fed.R.Evid. 404(b) but because it was "an integral part of the immediate context of the crime charged." *United States v. Bass,* 794 F.2d 1305, 1312 (8th Cir.), *cert. denied,* 479 U.S. 869, 93 L.Ed.2d 159, 107 S.Ct. 233 (1986). In general, evidence of a defendant's other criminal acts not charged in the indictment is not admissible. Evidence of other crimes may be admissible, however, where such evidence is "so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged." *Bracey v. United States,* 79 U.S.App.D.C. 23, 142 F.2d 85, 88 (footnotes omitted), *cert. denied,* 322 U.S. 762, 64 S.Ct. 1274, 88 L.Ed. 1589 (1944); *see, e.g., United States v. Tate,* 821 F.2d 1328, 1331 (8th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 712, 98 L.Ed.2d 662 (1988); *United States v. Derring,* 592 F.2d 1003, 1007 (8th Cir.1979). Here, the other crimes constituted an integral part of the operative facts of the crime charged, kidnapping,[4] and was therefore not excludable as extrinsic evidence, and Fed.R.Evid. 404(b) is not implicated. *See, e.g., United States v. Bass,* 794 F.2d at 1312.

■ "[T]aking [other crimes] evidence out of the scope of [Fed.R.Evid.] 404(b) analysis does not remove all limits on [its] admission.... The dictates of [Fed.R. Evid.] 403 must still be applied to ensure that [its] probative value ... is not outweighed by its prejudicial value." *Id.* Although we are somewhat troubled by the violent and extremely emotional nature of the evidence of other crimes in the present case, "[t]he line between permissible evidence which is an inextricable part of a criminal transaction and unduly prejudicial evidence proscribed by [Fed.R.Evid.] 403 is thin." *Id.* at 1313. We find no abuse of discretion.

■ Six next argues that the district court erred in denying his motion for change of venue because of prejudicial pretrial publicity. Six waived any objection by failing to question any juror about his or her knowledge of this case during voir dire. *Cf. Robinson v. Monsanto Co.,* 758 F.2d 331, 335 (8th Cir.1985) (right to challenge a juror waived by failure to object at the time the jury is empaneled if the basis for the objection might have been discovered during voir dire). Even if Six had pre-

---

**4.** The assaults on the other members of the Allen family and the kidnapping of Kathy Allen were parts of a single criminal transaction. The assaults showed that Kathy Allen did not voluntarily accompany Six and Petary. Further, the evidence of Christine Allen's rape helped to establish a motive for the abduction.

served this issue for appellate review, the record fails to support his argument.

Six next argues that the district court erred in failing to declare a mistrial after the Allens shouted derogatory remarks at him from the witness stand. "The decision whether a trial has been so tainted by prejudicial testimony that a mistrial should be declared lies within the discretion of the district court." *United States v. Muza,* 788 F.2d 1309, 1312 (8th Cir.1986); *see United States v. Reed,* 724 F.2d 677, 679–80 (8th Cir.1984). Here, the district court promptly admonished the jury to disregard the Allens' remarks. *See United States v. Young,* 553 F.2d 1132, 1136 (8th Cir.), *cert. denied,* 431 U.S. 959, 97 S.Ct. 2686, 53 L.Ed.2d 278 (1977). Under these circumstances, we hold the district court did not abuse its discretion in denying the motion for mistrial.

Six finally argues that the district court erred in admitting into evidence a graphic photograph of Kathy Allen's body. We disagree. The district court has broad discretion in deciding whether to admit a given item of evidence. *United States v. Williams,* 545 F.2d 47, 50 (8th Cir.1976). In this case there is no indication that the photograph was so gruesome or inflammatory that its prejudicial impact substantially outweighed its probative value. Because there were signs of a struggle and blood at the site, the photograph of the body was evidence that tended to show that Kathy Allen had been alive when Six and Petary transported her across state lines against her will. The district court did not abuse its discretion in admitting the photograph of the body into evidence.

Because we found no merit in any of Six's individual allegations of error, there is no reason to consider whether their cumulative effect denied him a fair trial.

Accordingly, the judgments of the district court are affirmed.