**UNITED STATES of America, Appellee,**

v.

**Douglas Greg CORNELIUS, Appellant.**

**UNITED STATES of America, Appellant,**

v.

**Douglas Greg CORNELIUS, Appellee.**

Nos. 90–2187SI, 90–2373SI.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 12, 1991.

Decided April 23, 1991.

Joseph Cahill, Nevada, Iowa, for appellant.

Linda R. Reade, Asst. U.S. Atty., Des Moines, Iowa, for appellee.

Before MAGILL, BEAM and LOKEN, Circuit Judges.

MAGILL, Circuit Judge.

Douglas Greg Cornelius appeals the district court's enhancement of his sentence for being a career offender under § 4B1.1

of the Sentencing Guidelines. United States Sentencing Commission, *Guidelines Manual* (Nov. 1990). After a jury convicted Cornelius of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), the district court sentenced him to 120 months' imprisonment, determining that his conviction was for a crime of violence under U.S.S.G. § 4B1.1. The government cross-appeals the district court's determination that Cornelius was not an armed career criminal under 18 U.S.C. § 924(e). We affirm the district court's determination that Cornelius was a career offender, but reverse its determination that Cornelius was not an armed career criminal.

## I.

Cornelius met Penni Lynn Ball in August 1986. In December 1987, Cornelius moved into Ball's house and lived there until May 1988. After moving out, Cornelius never lived in Ball's house again. In the fall of 1988, Ball obtained a court order barring Cornelius from contacting her. Nevertheless, Cornelius and Ball were married in December 1988. Within the first few weeks of their marriage, Cornelius called Ball and told her that he would give her a divorce if she "could come up with $150." Since Ball did not have the money, they did not get divorced at that time.[1] From the fall of 1988, Ball dated other men and continued living in the house with her three children and two roommates, Michelle Tiffany and Gary Yocom.

In the first week of February 1989, Cornelius and Ball got into a fight and Yocom called the sheriff's office for assistance. During the evening of February 11, Ball received a threatening telephone call from Cornelius. She testified that she was scared and believed Cornelius would come to the house. She took her three children over to her mother's house to spend the night. That evening, Ball and her boyfriend, William Vary, slept in Yocom's bedroom on the first floor and Yocom slept on the couch outside the door to his bedroom. At approximately 2:20 a.m., Yocom and Ball heard gunshots. They assumed that it was Cornelius who was firing the gun and reported the incident to the sheriff's office. Before they went back to bed, they placed pop bottles and cans inside the front door to warn them if anyone tried to enter the house.

At 5:30 a.m., Yocom awoke after he thought he heard the pop bottles in front of the door rattle. He saw Cornelius, who was wearing a gray leather jacket, crawling on the floor into the living room. Yocom lost sight of Cornelius after Yocom thought he heard the cellar door open. Yocom then woke up Ball and Vary, who called the sheriff's office again. After the deputies arrived, they entered the cellar to look for Cornelius. The cellar was dirty and damp, with raw sewage on the floor in many areas. The residents did not use the cellar for storage because it was too damp. In addition to finding Cornelius in the cellar, the deputies also found a clean gray leather jacket and a gun propped up against the rail of the stairs. The fact that the jacket and the gun were relatively clean and dry indicated that they had recently been placed in the cellar. The barrel of the gun had been sawed off and its serial number had been obliterated. Cornelius was subsequently arrested and charged with being a felon in possession of a firearm.

At trial, Billy J. Smith testified that he sold the gun to Cornelius in the late fall of 1988 and that at the time it was sold, the gun had both a full barrel and a serial number. At sentencing, the government argued that Cornelius should be sentenced as a career offender under U.S.S.G. § 4B1.1.[2] Cornelius objected, arguing that

---

1. Ball did file for divorce in May 1989.

2. This section provides:
   A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. If the offense level for a career criminal from the table below is greater than the offense level otherwise applicable, the offense level from the table below shall apply. A career

a conviction for being a felon in possession of a firearm did not constitute a crime of violence as required by § 4B1.1. The court disagreed with Cornelius and sentenced him as a career offender.

The government also argued that Cornelius should receive an 18 U.S.C. § 924(e) sentence enhancement as an armed career criminal.[3] Cornelius objected, arguing that his 1970 conviction for breaking and entering did not qualify as a burglary for purposes of § 924(e) because the state statute he was convicted under defined burglary too broadly.[4] While the government admitted that the statute was overbroad, it argued that the information contained the elements of generic burglary required by *Taylor v. United States*, — U.S. —, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). The district court refused to consider the information and held that § 924(e) did not apply because the language of the breaking and entering statute was too broad to count the 1970 conviction as generic burglary in light of *Taylor*.[5]

Cornelius appealed, challenging the district court's determination that his conviction of being a felon in possession of a firearm constituted a crime of violence for purposes of U.S.S.G. § 4B1.1 and attacking the constitutionality of § 4B1.1. The government cross-appealed, arguing that the district court's holding that Cornelius was not an armed career criminal under 18 U.S.C. § 924(e) was incorrect because Cornelius' breaking and entering conviction did qualify as a generic burglary offense.

offender's criminal history category in every case shall be Category VI.
U.S.S.G. § 4B1.1 (table omitted).

3. A sentence enhancement under 18 U.S.C. § 924(e) requires a showing of three previous convictions for a violent felony or a serious drug offense. The government established that Cornelius had been convicted of the following three felonies: breaking and entering, second degree arson, and extortion. In addition, Cornelius had been convicted of assault with intent to cause serious injury.

4. The statute provides:
If any person, with intent to commit any public offense, in the daytime break and enter, or in the nighttime enter without breaking, any dwelling house; or at anytime break

## II.

### A. Career Offender Designation

Cornelius first argues that being a felon in possession of a firearm is not included in the Sentencing Guidelines' definition of a crime of violence and therefore he should not have received the § 4B1.1 enhancement. The government argues that the court properly looked to the circumstances surrounding the conviction to determine that Cornelius had committed a crime of violence.

The Sentencing Guidelines define a "crime of violence" as

any offense under federal or state law punishable by imprisonment for a term exceeding one year that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(1). Cornelius correctly focuses on the language, "or otherwise involves conduct that presents serious potential risk of physical injury to another," found in § 4B1.2(1)(ii), arguing that his conduct did not present a serious potential risk of physical injury. While we have not directly addressed this part of § 4B1.2, other circuits have, and we find their approach instructive.

and enter any office, shop, store, warehouse, railroad car, boat or vessel, or any building in which any goods, merchandise, or valuable things are kept for use, sale or deposit, he shall be imprisoned in the penitentiary not more than ten years, or be fined not exceeding one hundred dollars and imprisoned in the county jail not more than one year.
Iowa Code § 708.8 (1969).

5. The district court stated that it was determining, as a matter of fact, that the 1970 conviction did not count under § 924(e). However, such a determination is not a factual finding, but rather a legal conclusion that is subject to de novo review by this court.

In *United States v. Goodman*, 914 F.2d 696 (5th Cir.1990), the Fifth Circuit held that a court may look beyond the face of the indictment and consider all of the facts in the record when it determines whether the defendant was convicted of a crime of violence for purposes of § 4B1.1. *Id.* at 699. The Seventh Circuit came to the same conclusion in *United States v. Alvarez*, 914 F.2d 915 (7th Cir.1990). The Seventh Circuit held that the court "must look to the underlying conduct as well as the elements of the offense" when determining whether an offense is a crime of violence under § 4B1.2. *Id.* at 918. *See also United States v. McNeal*, 900 F.2d 119, 123 (7th Cir.1990) ("[D]istrict court may consider facts underlying the conviction in determining whether possession of a firearm is a crime of violence."). While acknowledging that some district courts have accepted the notion that possession of a firearm by a felon is always a crime of violence, the Seventh Circuit expressed some skepticism about the validity of this view. *Id.*

The Ninth Circuit took a different approach when it addressed this question in *United States v. O'Neal*, 910 F.2d 663, 667 (9th Cir.1990). It explicitly chose not to address whether a court should look to the circumstances surrounding a conviction to determine whether it was a crime of violence. *Id.* at 667. Instead, it held that a "categorical analysis suffices to conclude that the offense of being a felon in possession of a firearm by its nature poses a substantial risk that physical force will be used against person or property" and therefore being a felon in possession of a firearm qualifies as a crime of violence. *Id.; see also Goodman*, 914 F.2d at 698–99 (noting that two district court cases in Fifth Circuit held mere possession of a firearm by a convicted felon constituted a crime of violence).

■ We join the emerging consensus and hold that courts should look beyond the mere statutory elements of a crime when determining whether an offense is a crime of violence. Having adopted this approach,

we review the district court's sentencing decision under the standard set out by Congress:

> The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.

18 U.S.C. § 3742(e)(4) (1988); *see also United States v. Lawrence*, 915 F.2d 402, 405 (8th Cir.1990). The district court's finding that Cornelius' actions presented a serious potential risk of physical injury to another was not clearly erroneous. Cornelius entered Ball's home late at night, without permission, and with a sawed-off gun after having a threatening conversation with Ball earlier that evening. Therefore, since the district court's determination was not clearly erroneous, we affirm its enhancement of Cornelius' base offense level for being a career offender.

### B. Constitutionality of Career Offender Guideline

■ Cornelius also argues that the career offender sentence enhancement, in general, violates the eighth amendment's prohibition against cruel and unusual punishment. We resolved this general question in *United States v. Foote*, 920 F.2d 1395 (8th Cir.1990), holding that "sentences under the Guidelines are sentences within statutorily prescribed ranges and therefore do not violate the Eighth Amendment." *Id.* at 1401 (citations omitted). Consequently, this claim fails.

### C. Armed Career Criminal Designation

■ The government argues that Cornelius' 1970 conviction for breaking and entering constituted generic burglary under *Taylor v. United States*, —— U.S. ——, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), and that as a result Cornelius is an armed career criminal under 18 U.S.C. § 924(e).[6] In *Taylor v. United States*, the Supreme Court

---

6. If Cornelius is found to be an armed career criminal in addition to a career offender, his sentencing range increases from 15–30 years to 30 years to life.

held that a conviction will be considered generic burglary for purposes of a sentence enhancement under § 924(e) if "either the statutory definition [of the offense] substantially corresponds to 'generic' burglary, or the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant." *Id.*, 110 S.Ct. at 2160. The court defined generic burglary as "an unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id.* at 2158.

Cornelius maintains that the district court properly refused to count his breaking and entering charge as generic burglary because the statute under which he was convicted was too broad to fit under the *Taylor* definition of generic burglary. The district court believed *Taylor* prevented it from looking behind Cornelius' guilty plea to determine whether the elements of the offense for which he was convicted constituted generic burglary. Our recent decision in *United States v. Payton*, 918 F.2d 54 (8th Cir.1990), resolves this issue in favor of the government.

In *Payton*, we held that if a defendant pleads guilty to a nongeneric burglary statute and the information portion of the charging document includes all of the elements of generic burglary, then the conviction constitutes generic burglary for the purposes of § 924(e). *Payton*, 918 F.2d at 56. In *Payton*, the defendant pleaded guilty to Iowa Code § 708.8 (1971), the same statute at issue in Cornelius' case.

Cornelius attempts to distinguish *Payton* by arguing that the defendant in *Payton* made a voluntary statement at the sentencing phase in which he admitted committing all of the elements of generic burglary. While the *Payton* court did acknowledge the defendant's in-court admission, it did not rely on this admission when determining that the previous conviction did constitute generic burglary under *Taylor*. *Payton*, 918 F.2d at 56. The information in *Payton* stated that on the day in question, the defendant "did break and enter a building located at 242 E. 30th with intent to

commit a public offense." *Id.* After quoting the information in *Payton* (and before mentioning the defendant's admission at sentencing), this court stated: "Appellant's pro se argument that the information does not fulfill the generic definition of *Taylor* is without merit." *Payton*, 918 F.2d at 56. Cornelius' information stated that on the day in question, Cornelius, "with intent to commit a public offense to-wit: larceny, [did] break[ ] and enter[ ] a restaurant owned by Lawrence Banks of McCallsburg, Iowa, located at McCallsburg, Iowa." Appellee's Brief at Add. 20. Cornelius' information is functionally indistinguishable from the information in *Payton*. Therefore, Cornelius' 1970 conviction did constitute generic burglary under *Taylor*. Consequently, we reverse the district court's determination that Cornelius was not an armed career criminal under § 924(e) and remand for resentencing.

### III.

For the foregoing reasons, the district court's sentence is affirmed in part and reversed in part. We affirm the district court with respect to its career offender determination; we reverse with respect to its armed career criminal determination and remand for resentencing consistent with this opinion.