**UNITED STATES of America, Appellee,**

v.

**Lawrence A. SAFFEELS, Appellant.**

No. 92–1823.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 12, 1992.
Decided Dec. 22, 1992.

Gary W. Conklin, Sioux Falls, SD, for appellant.

Michelle G. Tapkin, Asst. U.S. Atty., Sioux Falls, SD, for appellee.

Before FAGG, Circuit Judge, LAY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

Lawrence A. Saffeels appeals from his convictions for being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1) (1988), and for possession of an unregistered firearm, 26 U.S.C. § 5861 (1988). Saffeels also appeals from the 360–month sentence imposed on him by the District Court.[1] For the reasons set forth below, we affirm Saffeels's convictions and sentence.

The complicated factual scenario underlying this case and the range of issues raised on appeal require that we set forth the facts in detail. The charges brought in this case stem from the robbery of the Excel Inn in Sioux Falls, South Dakota, on December 29, 1989. The Excel Inn robbery was committed by a thin man, approximately six feet tall, with blond or sandy-colored hair; the robber wore a dark, army-type coat and was armed with a sawed-off shotgun. At the time this robbery was commit-

---

1. The Honorable John B. Jones, Chief United States District Judge for the District of South Dakota.

ted, Saffeels was on parole for a 1987 aggravated robbery conviction rendered in Martin County, Minnesota.

Approximately one month after the Excel Inn robbery, on January 27, 1990, the Thrifty Franklin Motel in Fairmont, Minnesota, was robbed. The desk clerk at that motel promptly reported the robbery to the police. The clerk described the robber as being approximately six feet tall with a slim build, and as having blond shoulder-length hair and a blond moustache. The clerk stated that the robber was wearing a dark coat, jeans, and a stocking cap, and that he was armed with a sawed-off shotgun. The police broadcast this description over the police radio.

Upon hearing the broadcast, Officer Peymann, who was several miles west of Fairmont on Interstate 90, positioned his car with his headlights focused to observe oncoming traffic travelling away from Fairmont. The occupants of the first eight to ten cars to pass Peymann each checked their speedometers or otherwise reacted to Peymann's presence. After eight or ten cars had passed Peymann's location, Saffeels drove by. Unlike the other drivers, Saffeels ignored Peymann and looked away from him.

In Officer Peymann's experience this was an unusual reaction, so the officer pulled out behind Saffeels and followed him for a distance. Saffeels continued to ignore Peymann's presence. Peymann observed that Saffeels had long blond hair and recorded the license plate of Saffeels's vehicle. Peymann then broke off his observation of Saffeels, returned to Fairmont, and reported what he had seen to Officer DeJong, the officer in charge of the investigation. DeJong calculated that if the robber had driven away from the inn at the speed limit he would have passed Peymann at almost exactly the time that Saffeels drove by. DeJong told Peymann to have Saffeels's vehicle stopped, and Peymann requested police in counties to the west of Fairmont to stop the vehicle.

Officer Schelhaas, a police officer in Worthington some distance to the west of Fairmont, received a call from his dispatch-

er reporting the armed robbery and asking him to stop Saffeels's vehicle if he should encounter it. Schelhaas did in fact observe the vehicle, and he and two other officers executed a "full felony stop" of Saffeels. The officers pulled Saffeels's vehicle over to the side of the road using their sirens (the officers were in two separate cars) and directed Saffeels to get out of the car with his arms raised. When Saffeels stepped out of the car, Officer Schelhaas observed a six to eight inch knife with a brass-knuckled handle in plain view inside the open door. The officers directed Saffeels to back up to them. They then frisked and handcuffed him.

Officer Schelhaas asked Saffeels where the shotgun he had used in the robbery was, but received no helpful response. Schelhaas was concerned that there might be someone else in Saffeels's car and approached the car using Saffeels as a shield. The officer saw a lump on the floor on the passenger side of the car under a coat and thought that there might be a person under the coat. Schelhaas leaned into the car, moved the coat, and discovered Saffeels's sawed-off shotgun protruding from a duffel bag. Following this discovery, Saffeels was arrested and taken to the local police station.

Saffeels was held in the Martin County jail, in Minnesota, on state charges of robbing the Thrifty Franklin Motel. He escaped from that jail, was recaptured in California in September 1990, and was returned to Martin County. By the time Saffeels was returned to Minnesota, federal firearms charges stemming from the Excel Inn robbery in Sioux Falls had been filed against him in the United States District Court for the District of South Dakota. A detainer based on the charges was filed against Saffeels at the Martin County jail. On September 26, 1990, Saffeels signed that detainer and requested that he receive a speedy trial on the federal charges.

Following Saffeels's signing of the detainer, the United States Attorney in South Dakota decided that, because Saffeels was in jail awaiting trial on the Minnesota

charges, the Interstate Agreement on Detainers did not apply to him. The United States Attorney notified Saffeels that the detainer's request for a speedy trial would not take effect until Saffeels was tried on the pending state charges. Saffeels was convicted on the Martin County charges on October 3, 1991. Shortly thereafter he was transferred to the Minnesota Correctional Facility at Stillwater. A new federal detainer was filed against Saffeels on October 17, 1991. Saffeels was transferred to federal custody in South Dakota, and, following a jury trial in the District Court on February 4–5, 1992, was convicted on the firearms charges.

For reversal of his conviction, Saffeels argues that: 1) the charges against him should have been dismissed because the government violated provisions of the Interstate Agreement on Detainers (IAD) and of the federal speedy trial statute; 2) his January 27, 1990 arrest violated the Fourth Amendment and evidence obtained as a result of the arrest should have been suppressed; 3) the trial court erred in admitting evidence regarding the Thrifty Franklin Motel robbery; and 4) the trial court erred in admitting evidence of three prior convictions. Saffeels also challenges the District Court's decision to sentence him as a career offender, which resulted in his receiving a sentence of 360 months.

### I.

Saffeels first argues that the charges against him should have been dismissed because the government violated his rights under the Interstate Agreement on Detainers (IAD), 18 U.S.C.App. (1988), and under a section of the federal speedy trial statute, 18 U.S.C. § 3161(j) (1988). We address these contentions in sequence.

The IAD was enacted in order to encourage the orderly and expeditious disposition of criminal charges pending in one jurisdiction against prisoners in another jurisdiction. 18 U.S.C.App. § 2, art. I. It provides prosecutors a way to obtain custody of defendants for trial, and provides prisoners with procedural protections when custody is so obtained and with a mechanism by which they can procure a resolution of pending criminal charges for which a detainer has been filed against them. *Id.* arts. III–V. Specifically, as concerns this case, the IAD provides:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint....

*Id.* art. III(a). Saffeels argues that, under this provision, he was entitled to be tried within 180 days after the federal detainer was lodged against him and after he requested a prompt trial; in other words, he claims he was entitled to be tried within 180 days of September 26, 1990. He contends that, because he was not tried until February 1992, the charges against him should have been dismissed under Article V(c) of the IAD.

■ It is well established that a pretrial detainee is not a person who has entered upon a "term of imprisonment" so as to be entitled to the protections of the IAD. *United States v. Harris,* 566 F.2d 610, 612–13 (8th Cir.1977) (explaining that IAD was intended to minimize interference with prisoners' treatment and rehabilitation; this objective has no application to pretrial detainees who are merely awaiting trial and have no immediate interest in treatment and rehabilitation programs); *United States v. Bayless,* 940 F.2d 300, 303–04 (8th Cir.1991). Saffeels argues, however, that he was not merely a pretrial detainee while he was being held at the Martin County jail. He contends that, because he received credit for the time he was detained against

his sentence for his 1987 aggravated robbery conviction, for which his parole was revoked, he was serving a "term of imprisonment."

If Saffeels's parole was in fact revoked before September 26, 1990, then he is correct that he was serving a "term of imprisonment." *See United States v. Roy*, 771 F.2d 54, 57–58 (2d Cir.1985) (holding that defendant whose parole for a prior conviction has been revoked and against whom additional charges are pending has an interest in rehabilitation and is serving a "term of imprisonment"), *cert. denied*, 475 U.S. 1110, 106 S.Ct. 1520, 89 L.Ed.2d 918 (1986). If, however, a revocation of Saffeels's parole was merely pending, then Saffeels's status was no different than that of a pretrial detainee. *See United States v. Reed*, 620 F.2d 709, 711–12 (9th Cir.) (holding that pending parole revocation does not constitute a "term of imprisonment" under the IAD), *cert. denied*, 449 U.S. 880, 101 S.Ct. 229, 66 L.Ed.2d 104 (1980).

The record in the case is sparsely developed, and does not permit us to determine when Saffeels's parole was actually revoked. At a pretrial hearing on his motion to dismiss, Saffeels presented evidence that a "revocation of parole" had been filed against him by the time that he signed the federal detainer on September 26, 1990. He also testified that he received credit for the final seventy-one days of his 1987 sentence for the time he spent in the Martin County jail between September 26 and December 18, 1990. The sheriff who oversaw the jail in which Saffeels was held testified that he was unaware of any probation revocation.

■ We need not determine, however, whether Saffeels's parole was actually revoked prior to September 26, 1990, or whether Saffeels's parole was revoked at some later date, at which time Saffeels was retroactively given credit for the time required to complete his sentence. Article III of the IAD limits its application to the case in which "a person has entered upon a term imprisonment in a ... party State, and ... *during the continuance of the term of imprisonment* there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner." 18 U.S.C.App. § 2, art. III(a) (emphasis added). Thus, by its own terms, Article III only applies during the period when a prisoner continues to serve a term of imprisonment.

Assuming *arguendo* that Saffeels's parole was revoked prior to September 26, 1990, his sentence expired some seventy-one days later on December 18, 1990. Thus, after December 18, 1990, the IAD no longer applied to Saffeels and he reverted to being merely a Minnesota pretrial detainee. When that happened, Saffeels lost any right he had to be tried on the federal charges underlying this case within the period specified in Article III of the IAD. Consequently, Saffeels's rights under the IAD were not violated. We note that the Seventh Circuit, presented with an analytically identical situation, reached the same result we do. *See United States v. Roy*, 830 F.2d 628, 632–33 & n. 3 (7th Cir.1987), *cert. denied*, 484 U.S. 1068, 108 S.Ct. 1033, 98 L.Ed.2d 997 (1988).

Saffeels's argument that the charges against him should have been dismissed because the government violated the federal speedy trial statute is equally without merit. The argument is based on 18 U.S.C. § 3161(j)(1), which provides:

> If the attorney for the Government knows that a person charged with an offense is serving a term of imprisonment in any penal institution, he shall promptly—
>
> (A) undertake to obtain the presence of the prisoner for trial; or
>
> (B) cause a detainer to be filed with the person having custody of the prisoner and request him to so advise the prisoner and to advise the prisoner of his right to demand trial.

Without suggesting that the government did, in fact, violate this provision, whether or not the government did so is of no matter in this appeal.

Every court to have considered the subject has held that dismissal of the charges

against a defendant is not an appropriate remedy for a violation of § 3161(j). *See United States v. Dawn,* 900 F.2d 1132, 1135–36 (7th Cir.) (and cases cited therein), *cert. denied,* 498 U.S. 949, 111 S.Ct. 368, 112 L.Ed.2d 330 (1990). These courts have noted that 18 U.S.C. § 3162 (1988), which provides sanctions for violations of § 3161, provides for dismissal of the charges against a defendant only in the case of a violation of § 3161(b) or § 3161(c). Nothing in § 3162 provides for dismissal where the government has violated § 3161(j). Therefore, the courts have reasoned, dismissal is not warranted where the government has violated § 3161(j). *See Dawn,* 900 F.2d at 1135 (noting that sanctions directed against the government attorney are available for violations of § 3161(j), so the provision is not unenforceable).

◼ We believe that the reasoning of these decisions is correct, and we adopt the rule that dismissal of charges against a defendant is not an appropriate remedy for violation of § 3161(j). Thus, even if the government did violate the provisions of § 3161(j), Saffeels was not entitled to have the charges against him dismissed. Given this, and given our conclusion that no violation of the IAD occurred, the trial court did not err in denying Saffeels's motion to dismiss the charges against him.

## II.

Saffeels next argues that the trial court erred in denying his motion to suppress evidence obtained as a result of his arrest on January 27, 1990. Saffeels argues that the police actions in stopping him, searching his vehicle, and arresting him violated the Fourth Amendment. We disagree.

◼ In order to perform an investigative stop of Saffeels's vehicle, the police must have had "reasonable, articulable suspicion that criminal activity may be afoot." *United States v. Miller,* 974 F.2d 953, 956 (8th Cir.1992); *see Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). We will reverse the District Court's finding of reasonable suspicion only if it is clearly erroneous. *United States v. Willis,* 967 F.2d 1220, 1223 (8th Cir.1992). The evi-

dence presented at the hearing on Saffeels's motion to suppress showed that Officer Peymann observed Saffeels drive by him and ignore him or look away, a reaction that in the officer's experience was highly unusual. Peymann also observed that Saffeels had blond hair, which matched the description of the robber provided by the motel clerk. When these facts were reported to Officer DeJong, DeJong calculated that the time at which Saffeels had passed Peymann was almost exactly the time someone driving away from the Thrifty Franklin Motel at the speed limit would have passed Peymann's position. Taken together, these facts support the trial court's conclusion that there was reasonable suspicion upon which to stop Saffeels's vehicle.

◼ "There is no bright line test to determine when police conduct exceeds the bounds of an investigative stop...." *Willis,* 967 F.2d at 1224. During an investigative stop officers may check for weapons and may take any additional steps "reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *United States v. Hensley,* 469 U.S. 221, 235, 105 S.Ct. 675, 683, 83 L.Ed.2d 604 (1985); *Miller,* 974 F.2d at 957. However, an investigative detention must be temporary and must last no longer than is necessary to effectuate the purpose of the stop. *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983). Moreover, the investigative methods employed must be the least intrusive methods reasonably available to dispel the officers' suspicions in a short period of time. *Id.* We review de novo the issue of whether a seizure exceeded the permissible scope of an investigative stop. *Miller,* 974 F.2d at 956; *see also United States v. McKines,* 933 F.2d 1412, 1426 (8th Cir.) (en banc), *cert. denied,* —— U.S. ——, 112 S.Ct. 593, 116 L.Ed.2d 617 (1991).

◼ We believe that the police action in this case was within the scope of a lawful investigative stop. Officer Schelhaas knew that he was stopping a driver suspected of committing robbery and of

being armed with a sawed-off shotgun. This was clearly a situation in which considerable precautions were warranted. Initially, it is well established that pulling a suspect over to the side of the road using police sirens does not exceed the bounds of a permissible stop. *See, e.g., United States v. Beardslee,* 609 F.2d 914, 916–17 (8th Cir.1979), *cert. denied,* 444 U.S. 1090, 100 S.Ct. 1053, 62 L.Ed.2d 778 (1980). Requiring Saffeels to exit the car with his hands up and to back up to the officers to be frisked was also a step that was reasonably necessary to protect the officers' personal safety in view of the fact that Saffeels was known to be armed. *See United States v. Jones,* 759 F.2d 633, 638 (8th Cir.) (holding that officer's approach to vehicle with gun drawn and command to suspect to get out of vehicle do not elevate stop into arrest), *cert. denied,* 474 U.S. 837, 106 S.Ct. 113, 88 L.Ed.2d 92 (1985); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Nor do we believe that the fact that Saffeels was handcuffed converted the stop into an arrest. *See Miller,* 974 F.2d at 957 (holding that the use of handcuffs can be a reasonable precaution during an investigative stop, and citing numerous cases to have so held).

As we stated in *Jones,* the case law suggests

> several factors to which we might look in determining whether the force used by officers ... was reasonable and thus in keeping with characterization of this encounter as an investigative stop. The factors variously cited by courts include the number of officers and police cars involved, the nature of the crime and whether there is reason to believe the suspect might be armed, the strength of the officers' articulable, objective suspicions, the erratic behavior of or suspicious movements by the persons under observation, and the need for immediate action by the officers and lack of opportunity for them to have made the stop in less threatening circumstances.

759 F.2d at 639–40. Applying these principles to the instant case, we believe that Officer Schelhaas's actions were reasonable. There were only three officers involved, the officers had reason to believe that Saffeels was armed with a sawed-off shotgun, they had a strong and articulable basis for this suspicion, and immediate action was required. We will not second-guess Officer Schelhaas's decision that the actions he took were the least intrusive means reasonably necessary to make a lawful investigative stop. *See Miller,* 974 F.2d at 957.

■■■■ We also find that the District Court did not clearly err, *see Willis,* 967 F.2d at 1223, in holding that Officer Schelhaas's discovery of the shotgun and his subsequent arrest of Saffeels satisfied the requirements of the Fourth Amendment. When police officers have a reasonable belief based on specific and articulable factors that the driver of a vehicle they have stopped is dangerous and that he may gain immediate control of weapons from the passenger compartment of his car, they may search those areas of the passenger compartment that may contain weapons. *Michigan v. Long,* 463 U.S. 1032, 1049–50, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983). In this case, Schelhaas had a reasonable basis to believe that Saffeels had a shotgun in his car and that, if Saffeels were able to get to his vehicle, or if he were released to the vehicle, the officers would be in danger. *See id.* at 1051–52, 103 S.Ct. at 3482. Moreover, Schelhaas testified that he was concerned that Saffeels might not have committed the robbery alone and that he thought there might be another person hiding under the coat in Saffeels's car. That person would have had access to any shotgun in the vehicle. In light of these facts, Schelhaas was justified in looking under the coat covering the duffel bag on the floor of Saffeels's vehicle. Once Schelhaas discovered the sawed-off shotgun under the coat, he clearly had probable cause to arrest Saffeels.

■■■ Saffeels's argument that no evidence was presented at trial supporting the existence of reasonable suspicion to stop the vehicle and to perform a brief search and of probable cause to arrest Saffeels is without merit. The District Court held a full evidentiary hearing on Saffeels's mo-

tion to suppress. The question of whether reasonable suspicion or probable cause existed was one for the court. There was no reason for presenting the evidence again at trial. Accordingly, we decline to reverse the trial court's denial of Saffeels's motion to suppress.

### III.

Saffeels next argues that the trial court erred in admitting evidence concerning the Thrifty Franklin Motel robbery. Saffeels contends that this evidence should not have been admitted under Federal Rule of Evidence 404(b) which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

We review the trial court's decision to admit the evidence for abuse of discretion. *United States v. Mays,* 822 F.2d 793, 797 (8th Cir.1987).

The standard in this Circuit for admission of evidence of other crimes is well established. Evidence of a prior bad act is admissible under Rule 404(b) if: 1) the evidence is relevant to a material issue; 2) the prior bad act is proved by a preponderance of the evidence; 3) the potential prejudice of the evidence does not substantially outweigh its probative value; and 4) the prior bad act is similar in kind and close in time to the crime charged. *United States v. Aranda,* 963 F.2d 211, 215 (8th Cir.1992); *United States v. Anderson,* 879 F.2d 369, 378 (8th Cir.), *cert. denied,* 493 U.S. 982, 110 S.Ct. 515, 107 L.Ed.2d 516 (1989).

In the instant case, the evidence concerning the robbery of the Thrifty Franklin Motel was clearly relevant to an issue, namely identity, that formed the cornerstone of Saffeels's defense. In his opening statement Saffeels's attorney stated, "Our defense, basically, is this: We think that they identified the wrong man. Their case on identity is pretty weak."

Transcript at 136. Second, it was proved by a preponderance of the evidence that Saffeels had robbed the Thrifty Franklin Motel, since Saffeels was captured fleeing the scene with his shotgun and with proceeds of the robbery.

Third, the task of balancing the probative value of evidence against its risk of unfair prejudice, *see* Fed.R.Evid. 403, is primarily for the trial court, and we generally defer to its judgment. *United States v. Bass,* 794 F.2d 1305, 1312 (8th Cir.), *cert. denied,* 479 U.S. 869, 107 S.Ct. 233, 93 L.Ed.2d 159 (1986). Here, the trial judge found that the probative value of the evidence was not outweighed by the risk of unfair prejudice. Moreover, the court acted to limit the prejudicial impact of the prior bad act evidence by giving the jury a limiting instruction at the time the evidence was offered; the instruction clearly stated that the evidence could not be considered as showing criminal propensity. Transcript at 54–55, 113–14. Finally, the robbery of the Thrifty Franklin Motel was similar in kind and close in time to that at the Excel Inn. Both were robberies of motels; both were committed by a lone robber; in each case the robber was armed with a sawed-off shotgun; and the two robberies were separated by a little more than a month.

We have upheld the admission of prior bad act evidence in cases very similar to the instant case. *E.g., Mays,* 822 F.2d at 797 (admitting evidence of a prior bad act for identity where the prior act and the charged offense were both robberies of rural banks committed by a gunman wielding a .45 caliber pistol and using a stolen getaway vehicle that was later abandoned). Accordingly, we hold that the trial judge did not abuse his discretion in ruling that the evidence of the robbery of the Thrifty Franklin Motel was admissible.

### IV.

At trial the government introduced evidence that Saffeels had committed three prior felonies. Evidence of these felonies was limited to the name of the crime, the

place the crime was committed, and the date of the crime. Saffeels alleges that he offered to stipulate that he was a convicted felon. Saffeels argues that it was error for the court to admit the evidence of the three prior felonies, since the charge under 18 U.S.C. 922(g)(1) required evidence of only one prior felony conviction. He contends that evidence of the other felony convictions should have been excluded because it did not go to any issue for which prior bad act evidence may be admitted under Federal Rule of Evidence 404(b) and because it was unfairly prejudicial.

We have repeatedly held that the government is not required to accept a defendant's stipulation to a prior felony conviction in lieu of proving the conviction where, as here, proof of the conviction is a necessary element of the prosecution's case. *See, e.g., United States v. Blade,* 811 F.2d 461, 466 (8th Cir.), *cert. denied,* 484 U.S. 839, 108 S.Ct. 124, 98 L.Ed.2d 82 (1987); *Rush v. United States,* 795 F.2d 638, 639–40 (8th Cir.1986). Moreover, we have consistently held that it is not error to allow the government to prove multiple convictions even though proof of only one conviction is required. *See, e.g., Blade,* 811 F.2d at 466 (four convictions); *Rush,* 795 F.2d at 639–40 (three convictions). In light of these decisions, the trial judge did not err in admitting evidence of three of Saffeels's prior felony convictions.

## V.

■ Finally, Saffeels appeals from the 360 month sentence imposed by the District Court. "A sentencing court must determine the particular sentence to be imposed with reference to the guidelines and commentary that are in effect at the time of sentencing." *United States v. Brunson,* 915 F.2d 392, 393 (8th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1011, 112 L.Ed.2d 1093 (1991); *see* 18 U.S.C. § 3553(a)(4) (1988). Because Saffeels was sentenced on March 30, 1992, this case is governed by the version of the guidelines incorporating amendments that became effective November 1991. United States Sen-

tencing Commission, *Guidelines Manual* (Nov.1991) [hereinafter U.S.S.G.].

Saffeels argues that the trial court erred in treating him as a career offender under section 4B1.1 of the guidelines. That section provides:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1. The dispute in this case centers on the question of whether Saffeels's instant offense of conviction is a "crime of violence." The guidelines define this term as follows:

The term "crime of violence" means any offense under federal or state law punishable by imprisonment for a term exceeding one year that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2.

In reaching its conclusion that Saffeels's conviction was for a "crime of violence," the District Court relied on our decision in *United States v. Cornelius,* 931 F.2d 490 (8th Cir.1991), which was decided under the guidelines incorporating amendments through November 1990. That case, like the instant case, involved a defendant who had committed what was clearly a violent crime, but who was charged only with, and convicted only of, being a felon in possession of a firearm. In *Cornelius,* we held that "courts should look beyond the mere statutory elements of a crime when determining whether an offense is a crime of violence." 931 F.2d at 493. Because Cornelius's actions presented a serious risk of

physical injury, we held that Cornelius's crime was a "crime of violence." *Id.*

In November 1991, after our *Cornelius* decision, the United States Sentencing Commission amended the commentary to guidelines section 4B1.2. Most specifically, as concerns this case, the Commission added language stating, "The term 'crime of violence' does not include the offense of unlawful possession of a firearm by a felon." U.S.S.G. § 4B1.2, comment (n. 2). Although no circuit had held that "crime of violence" excluded the offense of unlawful possession of a firearm by a felon prior to this amendment, *United States v. Stinson*, 957 F.2d 813, 814 (11th Cir.), *cert. granted,* — U.S. —, 113 S.Ct. 459, 121 L.Ed.2d 368 (1992), at least three circuits have relied in part on the amendment to hold that unlawful possession of a firearm by a felon is not a crime of violence. *United States v. Joshua*, 976 F.2d 844, 850–56 (3d Cir.1992); *United States v. Fitzhugh*, 954 F.2d 253, 254–55 (5th Cir.1992); *United States v. Johnson*, 953 F.2d 110, 112–15 (4th Cir.1991). *But see Stinson*, 957 F.2d 813 (refusing to overrule prior decision based on an amendment to guidelines commentary).

Recently, the Supreme Court granted a writ of certiorari to consider the question of whether a court's failure to follow guidelines commentary that gives specific direction that the offense of unlawful possession of a firearm by a felon is not a crime of violence constitutes an incorrect application of the guidelines. *Stinson v. United States,* — U.S. —, 113 S.Ct. 459, 121 L.Ed.2d 368 (1992). Rather than address the question of the effect of the amendment to the guidelines commentary for the first time on appeal, without the benefit of briefing and argument on the issue,[2] and while *Stinson* is pending, we simply affirm Saffeels's sentence on the basis of *Cornelius.* If it develops that the decision of the Supreme Court in *Stinson* allows Saffeels a ground for relief from his sentence, he may pursue that relief by filing in the District Court a motion under 28 U.S.C. § 2255 (1988). We note that, even if Saffeels is not ultimately treated as a career offender, the benefit to him may be less than he might expect, since the very same amendment to the commentary to guidelines section 4B1.2 suggests that, as one sentenced under 18 U.S.C. § 924(e) (1988 & Supp. III 1991), he should be treated as an armed career criminal under guidelines section 4B1.4. U.S.S.G. § 4B1.2, comment (n. 2).

Saffeels's convictions and sentence are affirmed.

---

**2.** Saffeels merely asked us to reconsider our decision in *Cornelius,* something we would not be free to do in the absence of the amendment to the guidelines. *Brown v. First Nat'l Bank in Lenox,* 844 F.2d 580, 582 (8th Cir.) ("one panel of this Court is not at liberty to overrule an opinion filed by another panel"), *cert. dismissed,* 487 U.S. 1260, 109 S.Ct. 20, 101 L.Ed.2d 971 (1988). Nothing in Saffeels's brief addresses the amendment or even points out that it occurred.