UNITED STATES of America, Appellee,

v.

Jeromey Clay PARKER, Appellant.

UNITED STATES of America, Appellee,

v.

Phillip Allen POTTER, Appellant.

Nos. 92–3512, 92–3516.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 16, 1993.

Decided March 8, 1993.

·Rehearing Denied May 11, 1993.

Bennett S. Nolan, Fort Smith, AR, argued, for appellant in No. 92–3512.

Robert E. Hough, Jr., Fort Smith, AR, argued, for appellant in No. 92–3516.

William M. Cromwell, Fort Smith, AR, argued, for appellee.

Before McMILLIAN, MAGILL, and LOKEN, Circuit Judges.

MAGILL, Circuit Judge.

Jeromey Clay Parker and Phillip Allen Potter were convicted of offenses connected with a murder-for-hire scheme. On appeal, they claim the district court[1] erred by denying their motion to dismiss pursuant to 18 U.S.C. § 5032 and by increasing their offense level on the ground that their victim sustained serious bodily injury. Potter also claims his Sixth Amendment right to confront witnesses was violated when the district court admitted hearsay evidence at his sentencing hearing. Parker claims the district court erred by increasing his offense level for more than minimal planning and because the conspiracy was motivated by a payment or offer of money. We affirm.

## I. BACKGROUND

In the spring of 1989, Jack Lowrimore, Sr., and Shirley Lowrimore were divorced. Shortly afterward, Jack hired Jimmy Thomas to kill Shirley and paid him $1200 in cash. Shirley Lowrimore was a resident of Fort Smith, Arkansas, while Jack Lowrimore and Thomas both were residents of Oklahoma.

Thomas attempted to subcontract the assignment to murder Shirley to another individual, but this attempt failed. In May 1989, Thomas hired Phillip Potter, a juvenile, to kill Shirley. Potter was paid $350 for the job.

Between May 23 and June 15, Potter and two other individuals made repeated trips from Oklahoma to Arkansas for the purpose of killing Shirley. Thomas furnished a vehicle and weapons for each trip. Shirley was not assaulted on any of these trips.

Jeromey Parker, also a juvenile, then became involved in the murder conspiracy. Between July 5 and July 22, Potter, Parker, and Potter's stepbrother, Idis Lee Martin, made several trips from Oklahoma to Arkansas for the purpose of killing Shirley. Again, Thomas furnished a vehicle and weapons for each of these trips.

The final trip was made on July 22, 1989. Parker, accompanied by Potter and Martin, drove a pickup from Panama, Oklahoma, to Fort Smith, Arkansas. The three were armed with a .20 gauge shotgun and a .30–.30 rifle. They drove to the vicinity of Shirley's apartment and waited for her arrival. When they saw her vehicle enter the area, Potter and Parker left the pickup and walked toward her apartment. Martin remained in the pickup. Potter was carrying the .20 gauge shotgun and Parker was carrying the .30–.30 rifle. After Potter indicated he could not shoot Shirley, they traded weapons. As Shirley was walking up the steps toward her apartment, Parker ran to the bottom of the steps and fired five times with the shotgun. The shotgun was loaded with three shells containing number 6 shot and two deer slugs. Shirley survived the shooting, but sustained over 100 pellet wounds to her head, arms, legs, and upper torso.

Thomas, Martin, and Parker traveled to Kansas to avoid law enforcement officials. After the three returned to Oklahoma, Potter joined them in a motel. Thomas then informed Jack Lowrimore he could not

1. The Honorable Jimm Larry Hendren, United    States District Judge for the Western District of

complete the killing.[2]

A grand jury returned sealed indictments against Parker and Potter, charging them with conspiracy in violation of 18 U.S.C. § 371 (Count 1); and use of interstate commerce facilities in the commission of murder-for-hire in violation of 18 U.S.C. § 1958(a) and 18 U.S.C. § 2 (Count 2). Criminal complaints were then filed against them alleging they had committed acts of juvenile delinquency in violation of 18 U.S.C. §§ 5031, et seq.

At a preliminary hearing held February 28, 1991, a magistrate judge[3] determined probable cause did exist to require Potter and Parker to answer to allegations of juvenile delinquency. The district court entered an order on May 21, 1991, which granted the government's motion to transfer both juveniles to adult status.[4] The transfer decision was upheld on appeal. *See United States v. Parker*, 956 F.2d 169 (8th Cir.1992).

Pursuant to a plea agreement, Potter pled guilty to Count 2 and the government dismissed Count 1. He was sentenced to 135 months in jail and three years supervised release. After a jury trial, Parker was found guilty on both counts. He was sentenced to 168 months in jail and three years supervised release.[5]

## II. DISCUSSION

### A. 18 U.S.C. § 5032

■ Potter and Parker both claim their prosecution is barred under 18 U.S.C. § 5032, and the district court erred by overruling their motion to dismiss.

The relevant language of the statute states:

> Once a juvenile has entered a plea of guilty or the proceeding has reached the stage that evidence has begun to be taken with respect to a crime or an alleged act of juvenile delinquency subsequent criminal prosecution or juvenile proceedings based upon such alleged act of delinquency shall be barred.

18 U.S.C. § 5032.

This case was initiated by complaint instead of by information. Consequently, a magistrate judge conducted a preliminary hearing pursuant to Federal Rule of Criminal Procedure 5.1. Potter and Parker contend that because evidence was taken at this preliminary examination, any proceedings prosecuting them are barred. This is a question of statutory interpretation, which we review *de novo. Tramp v. United States*, 978 F.2d 1055 (8th Cir.1992) (per curiam).

We first note that the plain language of § 5032 bars subsequent criminal prosecution or juvenile proceedings. It does not bar subsequent hearings in the same prosecution. The Ninth Circuit, when interpreting § 5032, stated that the section "is concerned with protecting a juvenile from federal prosecution as an adult after juvenile proceedings have begun in district court and vice versa. In short, § 5032 merely restates the rule of double jeopardy in the juvenile context, barring successive prosecutions by the federal government." *Unit-*

---

Arkansas.

2. On September 29, 1989, Shirley Lowrimore's body was found in a rural area of LeFlore County, Oklahoma. She had been beaten, strangled, and an attempt had been made to burn her body. Jack Lowrimore has been found guilty of her murder.

3. The Honorable Beverly R. Stites, United States Magistrate Judge for the Western District of Arkansas.

4. A previous order had been entered granting the motion, but was dismissed on appeal because the district court lacked subject matter jurisdiction to make the transfer determination.

*United States v. Juvenile Male*, 923 F.2d 614 (8th Cir.1991).

5. Jimmy Thomas pled guilty to one count of violating 18 U.S.C. § 1958(a), and was sentenced to 151 months in prison. Idis Lee Martin pled guilty to one count of conspiracy in violation of 18 U.S.C. § 371, and was sentenced to 60 months in jail. Jack Lowrimore, Sr., was found guilty by a jury of violating 18 U.S.C. §§ 371, 1958(a), and 2, and was sentenced to 262 months imprisonment and three years supervised release. He was also found guilty of first degree murder in the death of Shirley Lowrimore and has been sentenced to life without parole by the State of Oklahoma.

*ed States v. Juvenile Female*, 869 F.2d 458 (9th Cir.1989). We agree.

The preliminary examination conducted by the magistrate judge was not a hearing on the merits. After the magistrate judge determined probable cause existed, the government sought a motion to transfer Potter and Parker to adult status. The district court then granted approval to transfer and the government lodged an indictment. The instant prosecution is simply a continuation of what began in the preliminary hearing. It is not a successive prosecution,[6] and the double jeopardy principle embodied in § 5032 has not been violated. *See id.*

The district court correctly denied the motion to dismiss.

### B. Serious Bodily Injury

■ Potter and Parker next claim the district court erred when it increased their offense level under U.S.S.G. § 2A2.1(b)(3) (Nov. 1989). This section provides for an increase of four levels if the victim sustained serious bodily injury. They contend the court erred when it found that Shirley Lowrimore sustained serious bodily injury.

We "accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e); *see, e.g., United States v. Cornelius*, 931 F.2d 490, 493 (8th Cir.1991).

The Sentencing Guidelines define "serious bodily injury" as "injury involving extreme physical pain or the impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1, comment. (n. 1) (Nov. 1989).

Parker and Potter contend the court reached its conclusion that Shirley sustained serious bodily injury based only on belief unsupported by the record that she

experienced terror by being ambushed at night. We disagree.

The evidence before the court consisted of Shirley's medical records; a transcript of the sworn testimony of Melinda Saling, the victim's sister; and transcripts of sworn testimony of three other individuals. The court also had before it an unpublished Eighth Circuit opinion affirming in a related case a sentencing court's finding that Shirley Lowrimore sustained serious bodily injury.[7] Saling's and the other individuals' testimonies had been taken in the sentencing hearing of the related case.

When making its determination that Shirley sustained serious bodily injury, the sentencing court indicated in both Parker's and Potter's sentencing hearings that it was relying on all the evidence before it. At Parker's hearing, the court stated the sentencing court in the previous related case had the same evidence of Shirley's injuries before it and had found she sustained serious bodily injury. The court stated: "I'm not persuaded on the basis of that same evidence that I see anything that would cause me to reach a different conclusion on essentially the same evidence [considered in the previous sentencing hearing]...." Additionally, he noted the terror and fright resulting from repeated rounds fired from a shotgun at close range would be characterized as serious bodily injury.

At Potter's sentencing hearing, the court stated that terror from the attack and Saling's testimony supported the conclusion Shirley Lowrimore had sustained serious bodily injury. He specifically noted Saling's testimony supported the conclusion that "it was a very, very painful matter."

The medical records in evidence before the court indicate Shirley Lowrimore was prescribed crutches to walk. Saling's testimony stated Shirley was in pain, needed to use crutches, and could not walk on her own. Additionally, she testified Shirley was in shock and could not return to her employment because of mental trauma re-

---

6. We note that Potter, in his brief, admits a "preliminary hearing is a *part* of a criminal proceeding...." (Emphasis added).

7. This case involved Jimmy Thomas' appeal from his sentence for his part in the murder-for-hire scheme. *See United States v. Thomas*, No. 91–1557 (8th Cir. Sept. 25, 1991) (per curiam).

sulting from the attack. This evidence supports a determination that Shirley's injury involved "extreme physical pain or the impairment of a function of a bodily member, organ, or mental faculty...." U.S.S.G. § 1B1.1, comment. (n. 1) (Nov. 1989). The district court did not clearly err in finding Shirley Lowrimore suffered serious bodily injury.

## C. Hearsay Evidence at Sentencing

■ Potter argues his Sixth Amendment right to confront witnesses was violated when the district court admitted hearsay evidence at his sentencing hearing. The evidence to which Potter objects is the transcript of Melinda Saling's sworn testimony.

This court has held that the standard set by the Sentencing Guidelines for allowing hearsay evidence at sentencing does not violate the Confrontation Clause. *United States v. Wise*, 976 F.2d 393, 402 (8th Cir. 1992). The guidelines allow consideration of hearsay testimony as long as the testimony "has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3, comment. (Nov.1989). Saling's testimony was taken under oath at a sentencing hearing, and meets the guidelines' standard for allowing hearsay. We note Potter does not claim Saling's testimony is unreliable. Potter's right to confront witnesses was not violated.

## D. Relevant Conduct

■ Parker contends the district court erred by increasing his offense level by two levels under U.S.S.G. § 2A2.1(b)(1) (Nov. 1989) for more than minimal planning and by two levels under U.S.S.G. § 2A2.1(b)(4) (Nov. 1989) because the conspiracy was motivated by a payment or offer of money or other thing of value. We review the district court's findings that the increases apply for clear error. *United States v. Coney*, 949 F.2d 966, 968 (8th Cir.1991). Parker does not dispute that the conspiracy to murder Lowrimore involved more than minimal planning or that the conspiracy was motivated by a payment of money. Instead, he contends that he personally

was not involved in more than minimal planning and was not motivated by payment or offer of money. Parker argues such conduct by others involved in the conspiracy is not relevant conduct under U.S.S.G. § 1B1.3 and cannot be considered.

> Relevant conduct, in pertinent part, is: all acts and omissions committed or aided and abetted by the defendant or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense.

U.S.S.G. § 1B1.3(a)(1) (Nov. 1989). The commentary to this section states:

> In the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant 'would be otherwise accountable' also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant.

U.S.S.G. § 1B1.3, comment. (n. 1) (Nov. 1989).

If an offense involves repeated acts over a period of time, more than minimal planning is deemed present. U.S.S.G. § 1B1.1, comment. (n. 1(f)) (Nov. 1989). Parker made several trips to Fort Smith for the purpose of killing Shirley before the actual assault. Additionally, Parker admits others in the conspiracy engaged in more than minimal planning. This planning conducted by other members is reasonably foreseeable in a conspiracy to murder scheme, and Parker is held responsible for this planning. *See United States v. Wilson*, 955 F.2d 547, 551 (8th Cir.1992).

Parker also admits the payment of money motivated the conspiracy. Although the evidence does not indicate Parker ever received any payment, the increase applies to him if it was reasonably foreseeable that others in the conspiracy were motivated by a payment or offer of money. *See id.* We note that testimony at trial did indicate

Thomas promised to pay Parker if he killed Shirley. Additionally, we believe it is reasonably foreseeable that a promise of money or something of value is motivating a conspiracy to murder when the person agreeing to commit the murder has little or no other motive to commit the crime.

The court did not clearly err in applying the increases.

## III. CONCLUSION

We find no error by the district court. Therefore, we affirm.