**United States Court of Appeals**

**FOR THE EIGHTH CIRCUIT**

_____

No. 96-3163

_____

United States of America,    *
   *
      Plaintiff - Appellee,    *   Appeal from the United States
   *   District Court for the
   v.                      *   Western District of Missouri.
   *
Marques D. Rodgers,         *
   *
      Defendant - Appellant.    *
   *

_____

Submitted: April 18, 1997
Filed: September 2, 1997

_____

Before BOWMAN, WOLLMAN, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

Marques D. Rodgers was convicted on two counts of distribution of marijuana and one count of attempting to kill a witness to prevent his testimony.  Following the verdict, the district court[1] sentenced Rodgers to a total of 324 months of imprisonment. He appeals his sentence, and we affirm.

_____

[1]The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri.

In December 1993, Marques D. Rodgers worked at the Humane Society in Joplin, Missouri, and lived in a house on the premises. He became acquainted with an animal control officer named Eric Wright, who was a reserve police officer for Carterville, Missouri. Wright went to Rodgers' home on several occasions, where he observed drugs and assault weapons. Over time, Wright came to understand that Rodgers was dealing drugs.

Wright informed a DARE officer about Rodgers' activities, and the FBI subsequently enlisted him to work undercover and to negotiate with Rodgers for drugs and guns. Wright succeeded in purchasing a firearm and about 30 grams of marijuana. A search warrant was executed, and Rodgers was arrested. An SKS semiautomatic assault rifle, 16.2 grams of marijuana, .62 grams of cocaine base, and .36 grams of methamphetamine were seized, along with a variety of drug paraphernalia.

Four days later, Wright—who would be the primary witness for the prosecution—was assaulted by Marques Rodgers and his brother Marvin in front of Wright's house. Marques Rodgers attacked Wright from behind with a gun. When Rodgers put the gun to Wright's face, Wright grabbed it, and they struggled until Marvin Rodgers joined the fray and struck Wright repeatedly in the back of the head with a hard object. Wright then fell to his knees, and Marvin Rodgers placed a gun to his head. While Wright begged for his life, Marvin cocked the hammer and pulled the trigger. For some reason, the gun failed to fire.

The brothers then tried to force Wright into a van. Another struggle ensued, in which Wright was able to pull out a concealed weapon and get a shot off. The two assailants turned and ran. Seconds later, Marvin Rodgers stopped, turned, and raised his arm as if to shoot. Wright raised his own gun, shooting and killing Marvin Rodgers. Marques Rodgers disappeared and remained at large for over a year. He was

eventually apprehended in London, England.

Rodgers was extradited, tried, and found guilty on two counts of distribution of marijuana and one count of attempting to kill a federal witness. The court sentenced him to a total of 324 months, which was the bottom of the identified guideline range.[2]

## II.

Rodgers challenges three adjustments made at sentencing and claims that his counsel provided ineffective assistance. We address each issue in turn.

## Obstruction of Justice

Rodgers first challenges the two-level upward adjustment he received for obstruction of the administration of justice pursuant to U.S. Sentencing Guidelines Manual § 3C1.1 (1995).

After the attempted murder of Eric Wright in Missouri, Rodgers fled to Iowa and changed his appearance. He then assumed a new identity, obtained a fake identification and passport, and fled the country to London, England, where he was subsequently arrested and placed in jail while he resisted extradition. The government presented

---

[2]The offenses were grouped together for purposes of sentencing. The base offense level for attempting to kill a federal witness is 28. After adjustments, the offense level rose to 36. Rodgers had 20 criminal history points, which placed him in criminal history category six, with a resulting sentencing range of 324-405 months. Pursuant to USSG § 5G1.2(d), the court imposed the statutory maximum of 20 years (240 months) on the attempt to kill a federal witness count, and then imposed a consecutive 84-month sentence on the drug counts to achieve the total punishment (324 months) called for by the identified guidelines range.

evidence at sentencing that he had attempted to escape from custody in Britain, and the district court found that he had done so.  Rodgers claims that the district court clearly erred in finding that the escape attempt occurred and that, in any case, the record does not support the imposition of this enhancement.  We disagree.

We first examine the trial court's finding of fact.  We review the district court's findings of fact at sentencing under the standard set out by Congress in 18 U.S.C. § 3742(e) (1994), which provides that we must "give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous . . . ." *See United States v. Cornelius*, 931 F.2d 490, 493 (8th Cir. 1991).  In *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985), the Supreme Court further explicated the "clearly erroneous" standard, writing:

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.  Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

Evidence of the escape was limited to the testimony of Chris Morales, who testified at trial that Rodgers called her from jail and informed her that "on his way from jail to [c]ourt there would be an escape attempt." (Trial Tr. at 313.)  He also informed her that he had recruited a guard to help him and that he would flee to South America.  (Trial Tr. At 314.)  The government had the burden of proving the fact of the escape attempt by a preponderance of the evidence. *United States v. Miller*, 943 F.2d 858, 860 (8th Cir. 1991).  Although we agree with appellant that the evidence regarding the escape attempt was certainly not overwhelming, we find that the district court's determination that the government had met its burden was not clearly erroneous.  This finding was based, in large part, on credibility determinations. "[W]hen a trial judge's

finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Anderson*, 470 U.S. at 575. Such is the case here. There was no clear error.

We next address the district court's determination that these facts merited a section 3C1.1 adjustment. "We review de novo a sentencing court's determination that section 3C1.1 applies to specific conduct." *United States v. McCoy*, 36 F.3d 740, 742 (8th Cir. 1994). Escaping or attempting to escape from custody before trial constitutes one of the types of conduct to which a section 3C1.1 enhancement may be applied. USSG § 3C1.1 comment. (n.3(e)). The trial court additionally considered Rodgers' illegal emigration from the United States using false identification and his failure to appear for court appearances. All such behavior involves the willful obstruction of justice. We conclude that the district court correctly applied the obstruction-of-justice enhancement to Rodgers.

Rodgers also argues that this adjustment is unfairly counted twice, since a similar enhancement was applied to his drug charges which were grouped with the charge of attempted murder for purposes of sentencing. This claim is without merit. The sentencing range determined by the adjusted offense level of the drug count, even though it includes the two-level upward adjustment for obstruction of justice, is, under the guidelines, irrelevant to the actual sentence imposed. Section 5G1.2 directs that the total punishment derived from the count with the highest offense level be the sentence that is imposed for all counts, and it uses consecutive sentences to reach the total punishment level. In short, the whole of the statutory maximum on each of the drug counts is available in order to effect the total punishment required on the attempt to murder charge.

Rodgers next claims the district court erred in imposing a two-level upward adjustment pursuant to USSG § 2A2.1(b)(1)(B), which provides for such an adjustment in cases of attempted murder where the victim suffers "serious bodily injury" as a result of the attempt. Rodgers claims that the injuries suffered by Wright as a result of the attempt on his life were not "serious" and that the district court clearly erred in finding that they were. We disagree.

The Sentencing Guidelines define "serious bodily injury" as "injury involving extreme physical pain or the impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." USSG § 1B1.1, comment. (n.1(j)). Mr. Wright suffered a wide array of injuries in the attack. He was struck on the head multiple times and received several stitches to the resulting lacerations. He received bruises to both arms and the left shoulder. Additionally, Wright developed Posttraumatic Stress Disorder (PTSD), for which he was subsequently hospitalized.[3]

We review for clear error, *United States v. Parker*, 989 F.2d 948, 951 (8th Cir. 1993), and hold that the evidence adduced at trial was more than sufficient to support the trial court's finding that Mr. Wright suffered serious bodily injury. Not only did his injuries lead to hospitalization and require mental rehabilitation, they also involved the impairment of his mental faculties. *See* USSG § 1B1.1, comment. (n.1(j)). The

---

[3]PTSD , a debilitating stress disorder, is very common among crime victims like Wright who perceive that their lives are threatened and who also receive injury during the commission of the crime. Empirical studies have found that nearly two-thirds of such victims develop the disorder. Dean G. Kilpatrick and Heidi S. Resnick, "Posttraumatic Stress Disorder Associated with Exposure to Criminal Victimization in Clinical and Community Populations," in *Posttraumatic Stress Disorder: DSM IV and Beyond* 113, 128 t.7-9 (Jonathan R. Davidson & Edna B. Foa, eds., 1993).

therapist to whom he was referred stated as follows in a letter introduced as evidence at trial:

> The result was significant trauma in which classic signs of Post Traumatic Stress Disorder were exhibited. Irrational, debilitating fear, night terrors and nightmares, depression, anxiety attacks that generalized into all other areas of life management developed. As well, paranoia to the point of agoraphobic-like tendencies began to develop . . . so much so that the couple eventually had to move from their home permanently in order to feel safe enough to get well. Eric began developing stress-related physical problems which he continues to have.

(Appellant's App. At A13.)

While PTSD may not always rise to the level of serious bodily injury, it certainly can. *See United States v. Reed*, 26 F.3d 523, 530-31 (5th Cir. 1994) (upholding section 1B1.1 adjustment based on finding that victim's PTSD constituted serious bodily injury); *cf. Parker*, 989 F.2d at 951-52 (including mental trauma among indicia of serious bodily injury). We hold that in this case, in combination with the other injuries suffered, it did. The district court did not clearly err in finding that Mr. Wright had suffered serious bodily injury as a result of the murder attempt.

## Leader or Organizer of Criminal Activity

The trial judge imposed a four-level upward adjustment based on Rodgers' role in the offense. The Sentencing Guidelines provide for such an adjustment where "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." USSG § 3B1.1(a). Rodgers claims that the district court erred in holding that he met this standard. This is a question of fact which we review for clear error. *United States v. Skorniak*, 59 F.3d 750, 757 (8th Cir.), *cert. denied*, 116 S. Ct. 487 (1995).

Rodgers concedes there were five or more persons involved, but argues that the adjustment was inappropriate because there was insufficient evidence that he acted as a "leader or organizer." He claims that those who aided and abetted him were friends who did so *sua sponte* and without coordination. We disagree.

At sentencing, the government bears the burden of proving, by a preponderance of the evidence, facts necessary to establish a defendant's role in the offense. *United States v. Morton*, 957 F.2d 577, 581 (8th Cir. 1992) (citing *United States v. Malbrough*, 922 F.2d 458, 464 (8th Cir. 1990)). Factors the district court should consider include "the nature of defendant's role in the offense, the recruitment of accomplices, [and] the degree of participation in planning or organizing the offense." *United States v Escobar*, 50 F.3d 1414, 1425 (8th Cir. 1995) (internal quotations omitted). The government need only show that defendant played a leadership role in an organization of five or more persons. It need not show that his leadership role encompassed any particular number of participants. *United States v. Payne*, Nos. 95-4136/4195, 1997 WL 377988, at *10 (8th Cir. July 10, 1997).

The government easily met its burden. The record is replete with evidence that Rodgers was the driving force behind the murder attempt, that he had the most to gain from it, that he recruited the others to assist him, and that he organized and directed their every move as they executed the plan which he had conceived. Accordingly, we hold that the district court did not clearly err in finding Rodgers to be an organizer or leader, and we affirm the four-level enhancement applied pursuant to USSG § 3B1.1(a).

### Ineffective Assistance of Counsel

Rodgers argues that trial counsel was ineffective in several ways. Rodgers failed to raise this issue before the trial court, and no adequate factual record on the issue exists. Ineffective assistance of counsel claims are rarely entertained by this court on

direct appeal because the record is seldom sufficient for us to reach a conclusion. *See, e.g.*, *United States v. Logan*, 49 F.3d 352, 361 (8th Cir. 1995); *United States v. Jennings*, 12 F.3d 836, 840 (8th Cir. 1994); *United States v. Kindle*, 925 F.2d 272, 276 (8th Cir. 1991). We therefore decline to address these claims at this time. Rodgers remains free to raise them in a proceeding under 28 U.S.C. § 2255.

III.

For the foregoing reasons, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.